**STATE of Tennessee, Appellee,**

v.

**Fabien ELDRIDGE, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

May 7, 1997.

No Permission to Appeal Applied for to the Supreme Court.

Frank Buck, Smithville, Alan M. Dershowitz, Cambridge, MA, for Appellant.

Charles W. Burson, Attorney General and Reporter, Kathy Morante, Assistant Attorney General, Nashville, William Edward Gibson, District Attorney General, Ben Fann, Assistant District Attorney General, Cookeville, for Appellee.

## OPINION

RILEY, Judge.

This is a direct appeal from a jury verdict of guilty of attempted second degree murder. The defendant was sentenced as a standard offender to nine and one-half (9½) years in the Tennessee Department of Correction and fined in the amount of $25,000. Defendant presents the following issues for our review:

1. whether the state's failure to preserve a knife and failure to notify the defense of its disappearance violated defendant's constitutional rights;

2. whether the trial court's jury instruction on attempted second degree murder was erroneous due to the failure to include specific intent to kill as a required element of the offense; and

3. whether the participation as special prosecutors of attorneys who also represented the victim in a pending civil lawsuit arising from this incident violated defendant's due process rights.

We find the prosecutorial participation of attorneys who also represented the victim in

a pending civil lawsuit arising from the same incident violated defendant's due process rights and was prejudicial to the judicial process; therefore, we reverse and remand for a new trial.

## I. EVIDENCE AT TRIAL

Although the defendant does not contest the sufficiency of the evidence, a cursory examination of the state's proof is appropriate.

The state's proof showed that the defendant was angry with the victim over something that had happened to the defendant's sister. The defendant entered the victim's residence with what appeared to be a knife. Upon being summoned to the scene, the officers discovered the defendant beating the victim. The victim was covered with blood and had lacerations on his face. A knife was found on the couch.

The defendant was convicted of attempted second degree murder.

## II. THE MISSING KNIFE

The defendant claims that his rights under the Constitutions of the United States and the State of Tennessee were violated by the state's loss of an allegedly blood-covered knife. He specifically argues that the state violated the standards for disclosing exculpatory evidence set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Alternatively, he alleges that the state acted in bad faith in its handling of the knife in violation of *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

When the defendant was arrested, Deputy Sam Lee allegedly recovered four knives from the home of the victim. Deputy Lee apparently never sent the knives to be tested for blood and fingerprints. When the defense viewed the physical evidence prior to trial, one of the knives was missing.

### A. BRADY V. MARYLAND

The defendant argues that the state did not disclose that the fourth knife recovered from the home of the victim was blood-covered and had been misplaced. He contends

that Deputy Lee knew of the possibly exculpatory nature of the knife by placing it in a separate bag from the other knives. He claims the blood on the knife could be that of the co-defendant who intervened to protect the defendant from the victim, thereby supporting the defense that the victim was the first aggressor. Thus, he urges that "[t]hese facts were plainly 'favorable' to the defendant and would have been 'material' to his defense."

In *Brady v. Maryland,* the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197; *see also Hartman v. State,* 896 S.W.2d 94 (Tenn.1995). However, the state is not required to disclose information that the defendant already possesses. *State v. Marshall,* 845 S.W.2d 228 (Tenn.Crim.App. 1992).

The defendant knew as early as the preliminary hearing that four knives actually existed and that one or two of the knives had blood on them. Defense counsel asked Deputy Lee about the knives at the preliminary hearing as follows:

Q. "Did you find four kitchen-type knives at the scene with blood on them?"

A: "I found one I know for sure, I think possibly two, kitchen knives in the living room area with blood on them."

. . . .

Q: "Did you take into your possession four—a total of four kitchen knives?"

A: "Yes, I did."

Q: "One of which was blood covered and the other one you think had blood on it?"

A: "Yes."

Similarly, the defense was also aware at trial that one of the knives was missing. The defense investigator viewed the physical evidence the day before trial. Although he knew that four knives had been seized by the Sheriff's Department, only three knives were produced. All of the knives were dirty, but

only one had what appeared to be blood, food, or rust on it.

■ We conclude that *Brady* was not violated in this case. The defense was aware that four knives were seized from the scene and that there was blood on at least one of the knives. Further, the defense knew at trial that one of the knives was missing from the physical evidence. The state did not suppress any of this information. The defense made no objections during trial, nor did they ask that any of the knives be tested. Therefore, we find no merit to this issue.

### B. ARIZONA V. YOUNGBLOOD

In the alternative, the defendant argues that the state exhibited bad faith in its failure to preserve the fourth knife as potentially useful evidence. Therefore, he claims that the state infringed on his right to due process of law under *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

In *Arizona v. Youngblood,* the Supreme Court majority held that failure to preserve potentially useful evidence can be a denial of due process if the defendant can show bad faith on the part of the police. The Court noted that the presence of bad faith necessarily turns on the police's knowledge of the exculpatory nature of the evidence at the time it is lost or misplaced. *Id.* at 56, 109 S.Ct. at 336.

In this case, we are confronted with many differing stories as to the nature of the missing knife. It is unclear from the preliminary hearing, the testimony at trial, and the post-trial testimony and affidavits whether or not there was blood on the knife. Deputy Lee stated at the preliminary hearing that maybe two knives were covered in blood. However, at the hearing on the motion for new trial, Deputy Lee claimed that only one knife had blood on it, and he kept it separate from the others. Furthermore, the day before trial, the defense saw only three knives, one of which possibly had blood on it. Consequently, we are left to speculate as to the exculpatory nature of this missing knife.

■ In any event, the defendant has not demonstrated that the police acted in bad faith in its misplacement of the knife. The mere fact that it is missing is not an indicia of bad faith. Deputy Lee was not aware of any exculpatory value of the knife at the onset. Any error on the part of the state was merely negligence. Accordingly, we find no violation of *Arizona v. Youngblood.*

### III. JURY CHARGE ON ATTEMPTED SECOND DEGREE MURDER

Defendant contends the jury charge on attempted second degree murder was deficient by failing to include the specific intent to kill as an element of the offense.

The jury charge as to attempted second degree murder required the state to prove beyond a reasonable doubt the following:

"(1) that the defendant acted knowingly to commit the offense of second degree murder; and

(2) that the defendant acted with intent to complete a course of action or cause a result that would constitute second degree murder under the circumstances surrounding the conduct as the person believed them to be and the conduct constituted a substantial step toward the commission of second degree murder.

Conduct does not constitute a substantial step unless the defendant's entire course of action is corroborative of the intent to commit the offense.

Before you find the defendant guilty of attempted second degree murder, you must be satisfied beyond a reasonable doubt that the attempt was of such a character and made under such circumstances that had death resulted, the defendants would have been guilty of second degree murder."

The jury charge then defined the elements of second degree murder as follows:

(1) that the defendant unlawfully killed the alleged victim; and

(2) that the killing was knowing.

. . . .

The requirement of "knowing" is also established if it is shown that the defendant acted intentionally.

"Intentional" means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result.

"Knowing" means that a person acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct and that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

The jury charge used by the trial court was identical to the pattern jury charge on criminal attempt. T.P.I.—Crim. 4.01 (3rd ed.1992). This pattern charge does not expressly state that a defendant must intend to commit the specific offense of second degree murder. The new edition, T.P.I.—Crim. 4.01 (4th ed.1995), expressly includes the defendant's intent to commit the specific offense as an essential element. Unfortunately, this pattern charge had not been published at the time of trial.

Furthermore, *State v. Kimbrough*, 924 S.W.2d 888 (Tenn.1996) had not been decided at the time of trial. *Kimbrough* definitively holds that an attempt to commit murder requires a specific intent to kill. *Id.* at 891.

■ The alleged omission from the jury charge was not brought to the attention of the trial judge. Nevertheless, the failure to make such an objection does not bar the defendant from using it as a basis of the motion for new trial. T.R.Cr.P. 30(b). Although counsel must raise a contemporaneous objection to an incomplete jury charge, *see State v. Haynes*, 720 S.W.2d 76 (Tenn. Crim.App.1986), there is no requirement for an objection to the inclusion of an erroneous instruction or otherwise inaccurate charge. *State v. Stafford*, 670 S.W.2d 243 (Tenn.Crim. App.1984).

■ Certainly, the language in the new pattern charge requiring as an element of the offense "that the defendant intended to commit the specific offense of [second degree murder]" is preferable. However, the jury charge in the instant case implicitly required a finding of the intent to commit second degree murder. The charge required the jury to find that "the defendant *acted with intent* to complete a course of action or cause a result that would constitute second degree murder ..." (emphasis added). The charge further required a finding that the defendant's "conduct constitute a substantial step toward the commission of second degree murder" with the defendant's entire course of action "corroborative of the *intent* to commit the offense." (emphasis added). This can only be interpreted to require an intent to commit second degree murder.

In determining that criminal attempt requires a specific intent, *Kimbrough* emphasized the language "intent to complete a course of action or cause a result" in our criminal attempt statute. *Supra* at 889–890; T.C.A. § 39–12–101(a)(3). We conclude this language in the statute, which was expressly charged to the jury, sufficiently encompasses the specific intent required for criminal attempt.

This issue is without merit.

## SPECIAL PROSECUTORS

Defendant next asserts that the participation as special prosecutors of the victim's attorneys who were actively litigating a related pending civil lawsuit violated his rights to due process of law. We agree.

### A. Involvement of the Special Prosecutors

Approximately seven (7) months prior to the criminal trial, the victim's private attorneys filed a civil lawsuit against the defendant seeking $1,000,000 in compensatory damages and $2,000,000 in punitive damages for injuries arising from the same incident prosecuted in the criminal case. Approximately two (2) weeks prior to trial the district attorney general by letter to the special prosecutors (1) confirmed the participation of the special prosecutors; (2) advised that various items of evidence would be delivered to the special prosecutors; (3) stated that defense discovery would be completed through the office of the special prosecutors; (4) en-

closed a copy of *Ganger v. Peyton,* 379 F.2d 709 (4th Cir.1967), "setting forth some limitations for special prosecutors who are handling a civil case arising out of the same offense;"[1] and (5) "decline[d] any further involvement due to our busy schedules, other than the requirements of *Ganger* and T.C.A. § 8–7–401."

Prior to trial the special prosecutors served several motions on defense counsel. At trial the special prosecutors conducted the voir dire, argued all pre-trial motions, gave the opening statement, handled motions and objections, examined every witness for the prosecution and defense, and delivered the primary closing argument. The only active involvement by the assistant district attorney general was making the rebuttal argument required by T.C.A. § 8–7–401 at which time the assistant district attorney stated to the jury:

> "... I've been here watching two young prosecutors, special prosecutors, and three young defense attorneys, but the law says I have to come up here and give the last argument because I'm an Assistant District Attorney."

At no time prior to trial or during trial did defense counsel raise any objection to the participation by the special prosecutors. It was not until the defendant retained other counsel to represent him on the motion for new trial that the issue was first raised in the trial court. In denying the motion for new trial, the trial judge found that the special prosecutor issue had been waived by the failure to object. Based upon the "affidavits and oral testimony of the District Attorney and the Special Prosecutors given in response to this motion," the trial judge found that the district attorney maintained appropriate control of the prosecution of the case.

### B. Other Jurisdictions and Tennessee

Being aware of the special dangers inherent in private prosecutions, some states prohibit the practice altogether. *See* Patricia Moran, *Private Prosecutors in Criminal Contempt Actions Under Rule 42(b) of the*

*Federal Rules of Criminal Procedure,* 54 Fordham L.Rev. 1141, 1152 (1986) [hereinafter Moran, *Private Prosecutors* ].

The majority of jurisdictions that allow the use of private prosecutors, by statute or case law, require the public prosecutor's consent and retention of control over the case. *See* John D. Bessler, *The Public Interest and the Unconstitutionality of Private Prosecutors,* 47 Ark.L.Rev. 511, 529 (1994) [hereinafter Bessler, *The Public Interest* ] (citing numerous cases from other jurisdictions). Another restriction that is placed upon the use of private prosecutors in most states is the prohibition of their participation in related civil matters. *Id.* at 529–530; Moran, *Private Prosecutors* at 1154, n. 54 (citing *Peterson v. Peterson,* 278 Minn. 275, 281, 153 N.W.2d 825, 830 (1967)); *Born v. State,* 397 P.2d 924, 927 (Okl.Crim.App.1964), *cert. denied,* 379 U.S. 1000, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965); *Commonwealth v. Musto,* 348 Pa. 300, 303–304, 35 A.2d 307, 310 (1944); *State v. Basham,* 84 S.D. 250, 256, 170 N.W.2d 238, 241 (1969); *Cantrell v. Commonwealth,* 229 Va. 387, 393–394, 329 S.E.2d 22, 26–27 (1985); *State ex rel. Koppers Co. v. International Union of Oil, Chem. & Atomic Workers,* 171 W.Va. 290, 298 S.E.2d 827, 831 (W.Va.1982); *People v. White,* 365 Ill. 499, 511, 6 N.E.2d 1015, 1021 (1937). We are aware of only one twentieth century case holding unequivocally that a private prosecutor who also represents plaintiffs in a civil action arising out of the same proceeding presents no inherent due process or ethical problems. Moran, *Private Prosecutors* at n. 57 (citing *Hopkins v. State,* 429 So.2d 1146, 1154 (Ala.Crim.App.1983)).

■ There is statutory authority in Tennessee for the participation of special prosecutors retained by victims of crime. T.C.A. § 8–7–401 (1993) provides as follows:

> A victim of crime or the family members of a victim of crime may employ private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies in trying cases, with the extent of participation of such privately

---

1. Our reading of *Ganger* does not reveal a listing of limitations for special prosecutors who are handling a civil case arising out of the same offense. *Ganger* unequivocally condemns such a practice as violative of due process. *Ganger* at 714.

employed counsel being at the discretion of the district attorney general. The district attorney general or a deputy shall make the final and concluding argument. The privately retained counsel shall immediately inform the district attorney of such counsel's employment.[2]

There is no requirement that a district attorney general show cause for the participation of a special prosecutor in a criminal action. *State v. Voltz,* 626 S.W.2d 291 (Tenn.Crim. App.1981).

## C. Conflict of Interest/Ethical Dilemmas

There are certain inherent conflicts that arise due to the differing roles of the government prosecutor and private prosecutor. The responsibility of a public prosecutor differs from that of the usual advocate in that it is the public prosecutor's duty to seek justice, not merely to convict. *Code of Professional Responsibility,* Tenn.S.Ct. Rule 8, EC 7-13. Unlike a private prosecutor, the public prosecutor is not only an advocate but also must make decisions normally made by an individual client, and those affecting the public interest should be fair to all. *Id.* A public prosecutor represents the government. A public prosecutor is required to make timely disclosure of exculpatory materials. DR 7-103(B).

On the other hand, private counsel has an obligation to zealously represent the client so as not to prejudice or damage the client during the course of the professional relationship. DR 7-101. Counsel has a duty of fidelity, unquestioned, continuing fidelity to the client. *Brotherhood of Locomotive Firemen & Enginemen v. United States,* 411 F.2d 312, 319 (5th Cir.1969). A special prosecutor is placed in the awkward position of representing both the government and the individual victim or family of the victim.

The dual role of a special prosecutor presents other ethical dilemmas; namely, DR 5-105 provides that a lawyer should refuse to accept or continue employment if the interest of another client may impair the exercise of independent judgment; EC 5-1 provides that the professional judgment of a lawyer should be exercised solely for the benefit of the client, free of "compromising influences and loyalties;" EC 5-2 provides that a lawyer should not accept employment if there is a reasonable probability that personal interest will "affect adversely the advice to be given or services rendered the prospective client;" and EC 5-14 provides that independent professional judgment is compromised when a lawyer is asked to represent two (2) or more clients with differing interests. In the event a special prosecutor represents the victim in a civil case arising from the alleged criminal incident, DR 7-105 would prohibit participating in presenting or threatening to present criminal charges solely to obtain an advantage in a civil matter. Just as a special prosecutor may be tempted to bring a tenuously supported prosecution if such a reward promises financial or legal rewards for the private client, a special prosecutor may also be tempted to suggest the abandonment of a meritorious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges. *Young v. United States ex rel. Vuitton,* 481 U.S. 787, 805, 107 S.Ct. 2124, 2136-2137, 95 L.Ed.2d 740 (1987).

## D. Young

The most compelling analysis of the inherent conflicts experienced by special prosecutors is set forth in *Young v. United States, ex rel. Vuitton,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987). Acting through its supervisory authority, the Court cited numerous statutory and ethical duties giving rise to conflicts of interest and held that the appointment of an interested special prosecutor in a criminal contempt proceeding is so fundamental and pervasive that the conviction requires reversal without regard to the facts and circumstances of the particular case. *Id.* at 809-810, 107 S.Ct. at 2138-2139.

---

2. The 1995 amendment to T.C.A. § 8-7-401 authorizes a defendant to object to the employment of special prosecutors and directs the court to make a specific finding as to whether they have a conflict of interest as provided by law. T.C.A. § 8-7-401(b) (Supp.1996). The amendment was not in effect at the time of this trial.

## E. Due Process Violation

Although *Young* strongly condemned interested counsel serving as special prosecutors, the Court avoided the necessity of reaching the constitutional issue since it relied upon its inherent supervisory authority in condemning the practice. *Young,* 481 U.S. at 809, 107 S.Ct. at 2138–2139. Obviously, this does not preclude and probably only foreshadows a constitutional bar with respect to the use of interested private prosecutors. Bessler, *The Public Interest* at 571. In fact, the United States Supreme Court had earlier considered the due process implications of prosecutorial functions. In *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980), the court found no due process violation since no prosecutorial officials stood to benefit financially, and there was no realistic possibility that prosecutorial decisions would be "distorted" by improper influences. *Id.* at 250, 100 S.Ct. at 1617. However, the Court left open the possibility of due process violations where enforcement decisions are motivated by personal interest, financial or otherwise. *Id.* at 249–250, 100 S.Ct. at 1616–1617.

Numerous cases have either found express due process violations or due process implications relating to the participation of an interested prosecutor. Moran, *Private Prosecutors* at 1157 (citing *Ganger v. Peyton,* 379 F.2d 709, 714 (4th Cir.1967)); *Brotherhood of Locomotive Firemen v. United States,* 411 F.2d 312, 319 (5th Cir.1969); *Davenport v. State,* 157 Ga.App. 704, 705–706, 278 S.E.2d 440, 441; *State ex rel. Koppers Co. v. International Union Oil, Chem. & Atomic Workers,* 171 W.Va. 290, 298 S.E.2d 827, 832 (W.Va.1982); *Polo Fashions, Inc. v. Stock Buyers Int'l. Inc.,* 760 F.2d 698, 704 (6th Cir.1985); *People v. Zimmer,* 51 N.Y.2d 390, 395, 414 N.E.2d 705, 708, 434 N.Y.S.2d 206, 209 (1980); *People v. Superior Ct.,* 19 Cal.3d 255, 268–69, 561 P.2d 1164, 1173, 137 Cal. Rptr. 476, 485 (1977); *Cantrell v. Commonwealth,* 229 Va. 387, 394, 329 S.E.2d 22, 26–27 (1985). *See also Wright v. United States,* 732 F.2d 1048 (2d Cir.1984).

■ We have no hesitation in concluding that the participation by special prosecutors who represent the victim in a civil matter arising from the same incident giving rise to the criminal prosecution is a violation of the defendant's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution as well as the Law of the Land provision in Article I, § 8 of the Tennessee Constitution.

## F. Bennett

The controlling Tennessee case relating to special prosecutors is *State v. Bennett,* 798 S.W.2d 783 (Tenn.Crim.App.1990). *Bennett* held that T.C.A. § 8–7–401, the statute authorizing the employment of special prosecutors, does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or the Law of the Land Clause contained in Article I, § 8 of the Tennessee Constitution. Notwithstanding the facial constitutionality of the statute, the Court examined the actions of the special prosecutors in determining whether their actions resulted in a deprivation of a constitutional right. In finding no constitutional violation, the Court found as follows:

(1) the special prosecutors did not engage in prosecutorial misconduct;

(2) *the special prosecutors did not represent the family of the victim in a civil case arising out of the occurrence which gave rise to criminal prosecution* (emphasis added);

(3) this was not a contempt proceeding which arose out of a civil prosecution; and

(4) the district attorney general maintained control over the prosecution as required by our statute.

Although *Bennett* upheld the constitutionality of the statute, the actions of the special prosecutors must be examined in order to determine whether the application of the statute in a particular case results in constitutional deprivation.

## G. Due Process Application to Instant Case

An analysis of the activities of the special prosecutors in the instant case clearly reveals a due process violation. It is undisputed that the special prosecutors represented the victim in a civil case arising from the

incident giving rise to the criminal prosecution. This distinguishes the case from *State v. Bennett*, 798 S.W.2d at 786. As zealous advocates representing the victim in the civil case, counsel would best serve the victim by securing a criminal conviction. Evidence of the final judgment of conviction would be admissible in the civil trial to prove the facts essential to sustain the judgment. *Tennessee Rules of Evidence* § 803(22). In addition the victim's position in the civil litigation relating to the request for punitive damages would be more readily provable with a criminal conviction.

The special prosecutors endeavored to take an audio/visual deposition of defendant in the civil case just prior to the criminal trial. This, of course, is not allowable in the criminal prosecution. It resulted in an order from the civil tribunal authorizing the taking of the depositions; provided, however, the state would not be permitted to use at the criminal trial any portion of the depositions involving Fifth Amendment assertions.

There was a factual dispute as to whether the special prosecutors had offered to settle both the civil and criminal proceedings for a sum certain; however, this factual dispute was not resolved by the trial court. Nevertheless, the affidavit of one of the special prosecutors indicates that he discussed the possibility of settlement with the victim and was advised that the victim would settle for $250,000 to $300,000, "but he wanted Mr. Eldridge to do some time in jail." The affidavit reveals that the special prosecutor then advised defense counsel of the settlement offer of $250,000 to $300,000 for the civil case, "and that we would have no objection to Mr. Eldridge pleading to a lesser included felony offense, possibly aggravated assault, but that settlement of the criminal matter would be left up to the district attorney's office." Therefore, it is apparent that payment of this sum of money by the defendant would result in a favorable recommendation of the special prosecutors in the criminal matter.

Also of significance are the pecuniary advantages that could benefit the special prosecutors. *See* Moran, *Private Prosecutors* at 1158. Although it is unclear from the record how the special prosecutors were to be compensated in either the civil or criminal case, the special prosecutors certainly had a direct interest in the outcome of the criminal proceeding.[3]

The inherent conflicts of interest of the special prosecutors are indeed obvious and irreconcilable. Furthermore, although it is unnecessary to reach the issue as to whether the district attorney general retained adequate control of the prosecution, it is at least apparent that the special prosecutors had virtually total control of the trial proceeding. The only participation by the assistant district attorney general was in making the rebuttal argument which he acknowledged to the jury he was doing since "the law says I have to come up here and give the last argument because I'm an Assistant District Attorney." It would appear the public prosecutor followed his commitment set forth in his letter to the special prosecutor declining "further involvement due to our busy schedules, other than the requirements of *Ganger*[4] and T.C.A. § 8–7–401."[5]

We, therefore, conclude that defendant's rights under the United States and Tennessee Constitutions were violated under these circumstances.

### H. Waiver

The state contends any error with regard to the participation of the special prosecutors was waived due to the failure to object prior to or during trial. Ordinarily, the failure to take available action to prevent or nullify the

---

3. In the event the special prosecutors had the civil case on a contingency fee basis, then they would have a direct financial interest in the criminal proceeding leading to an irreconcilable conflict. The trial court made no finding regarding this issue; therefore, neither do we. Regardless of the method of compensation, counsel derives advantages from a conviction. Moran, *Private Prosecutors* at 1158.

4. As stated in Footnote 1, *Ganger* flatly prohibits prosecution under these circumstances.

5. The statute only requires that the public prosecutor give the final rebuttal argument. *State v. Bennett*, 798 S.W.2d 783, 786 (Tenn.Crim.App. 1990).

alleged error waives the issue. T.R.A.P. 36(a); *State v. Gregory*, 862 S.W.2d 574 (Tenn.Crim.App.1993). However, an error which has affected the substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. T.R.Cr.P. 52(b).

 "Plain error" or "fundamental error" is recognized under T.R.Cr.P. 52(b). *State v. Stephenson*, 878 S.W.2d 530 (Tenn.1994); *State v. Adkisson*, 899 S.W.2d 626 (Tenn. Crim.App.1994). Plain error is an egregious error that strikes at the "fairness, integrity or public reputation of judicial proceedings." *United States v. Rodriguez*, 882 F.2d 1059, 1064 (6th Cir.1989). Some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

In determining whether the appointment of an interested prosecutor was harmless error, *Young* declared the error was so fundamental and pervasive that it could not be harmless error. *Young v. United States, ex rel. Vuitton*, 481 U.S. at 810, 107 S.Ct. at 2139. What is at stake is the public perception of the integrity of our criminal justice system. *Id.* at 811, 107 S.Ct. at 2139–2140. Some violations represent defects in the structure of the trial mechanism and thus defy analysis by the harmless error standards. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *State v. Bobo*, 814 S.W.2d 353 (Tenn.1991). Although we are conducting a "plain error" analysis and not a "harmless error" analysis, the pervasive error that goes to the integrity of our judicial process is relevant under either analysis.

 We, therefore, conclude the due process violation is plain error affecting the very integrity of our system of justice to the extent that a new trial is the only remedy.

## Conclusion

It is indeed regrettable that a new trial must be conducted for reasons unrelated to the actual merits of the charge. It is further regrettable that defendant's trial counsel did not raise an objection before trial so that the trial judge would have had an opportunity to timely deal with the issue and avoid re-trial. We certainly do not fault the trial judge for the inaction of defense counsel.

Nevertheless, the issue was raised, albeit post-trial. Since the issue strikes at the heart and integrity of our system of justice, we must address it in spite of defense counsel's inaction. The fundamental right to due process must be recognized in the interest of justice.

The judgment of the trial court is reversed, and this cause is remanded for a new trial.

PEAY and WELLES, JJ., concur.

WELLES, Judge, concurring.

I concur fully with the result reached by my learned and able colleague, Judge Riley. I write separately to express my significantly different views concerning the role and manner of participation of privately employed attorneys in criminal prosecutions. I first note that while it is obvious that "private legal counsel" were pleased that they were allowed to assume almost total control of this criminal prosecution, and thus become "special prosecutors," they were able to do so only after the publicly employed prosecutors from the office of the district attorney general declined further significant involvement in the prosecution of this attempted murder case due to their "busy schedules."[1]

The legislature has specifically authorized the victim of a crime or the family members of a victim of a crime to employ "private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies *in trying cases*, with the extent of participation of such privately employed counsel being at the discretion of

---

1. Obviously, the lack of interest by the district attorney general was a result, at least in part, of his determination that his time would be better spent on other matters. Had it not been for the

availability of the "special prosecutors," a plea agreement favorable to the Defendant might well have materialized.

the district attorney general." Tenn.Code Ann. § 8–7–401 (emphasis added). If privately employed counsel's only participation is in *trying the case*, as provided by the statute, and the district attorney general retains control of the *prosecution*, the potential for violation of the defendant's rights is reduced.

Although the majority opinion does not conclude that this statute is unconstitutional as violating the due process rights of the criminal defendant, the opinion states that it is "unnecessary to reach the issue as to whether the district attorney general retained adequate control of the prosecution." I believe that in determining whether a defendant's due process rights are violated in a case involving private legal counsel serving as "special prosecutors," it is indeed necessary to reach the issue as to whether the district attorney general retained adequate control of the prosecution. In this case, however, I have no hesitation in concluding that the district attorney general did not retain adequate control. In fact, it appears that the district attorney general retained very. little control.

I agree, as pointed out by the majority, that the ethical dilemmas facing "special prosecutors" are quite serious and any ethical violations on their part are relevant to a determination of whether a defendant was deprived of his right to a fair trial. Perhaps it would be helpful if our supreme court specifically addressed these ethical concerns in our Code of Professional Responsibility. The majority opinion focuses on the ethical dilemma facing private counsel representing the victim in a civil suit to the exclusion of analyzing the level of participation of private counsel in the criminal prosecution. It appears to me, however, that private counsel employed for a fixed fee solely to participate in the criminal prosecution faces essentially the same ethical dilemma as private counsel who also represents the victim in a related civil suit, namely the conflict between zealous representation of a private client and the pursuit of justice in the public interest.

I am not convinced that the participation as co-counsel of a victim's attorney who represents the victim in a related pending civil law suit against the criminal defendant necessarily and always will violate a defendant's right to due process of law and thus require a conviction, otherwise obtained in accordance with law, to be reversed. I believe this determination is necessarily dependent upon the degree of participation in the prosecution by private legal counsel and by the corresponding degree of control over the prosecution retained by the office of the district attorney general.

As many courts and commentators have recognized, the potential danger to the due process guarantee of fundamental fairness is most pronounced when private counsel participates in the discretionary functions of the district attorney general, such as the plea bargaining process as well as the decisions of what charges to seek and whether to prosecute at all.[2] *See, e.g., Dick v. Scroggy*, 882 F.2d 192 (6th Cir.1989); *Jones v. Richards*, 776 F.2d 1244 (4th Cir.1985);[3] *Ganger v. Peyton*, 379 F.2d 709 (4th Cir.1967); John D. Bessler, *The Public Interest and the Unconstitutionality of Private Prosecutors*, 47 Ark. L.Rev. 511, 531–40 (1994); Patricia Moran, Note, *Private Prosecutors in Criminal Contempt Actions Under Rule 42(b) of the Fed-*

---

**2.** The legislative history of Tennessee Code Annotated section 8–7–401 indicates that the General Assembly was somewhat aware of the dangers of allowing private counsel to control the plea bargaining process. The original language of the House bill provided that private counsel could participate fully in cases, even where plea bargaining was deemed appropriate. Upon the recommendation of the House Judiciary Committee, however, the bill was amended to strike that language so that private counsel would not have excessive power over the plea bargaining process.

**3.** In *Jones*, another Fourth Circuit case, the court distinguished *Ganger* and found no due process violation. Private counsel was retained to assist in the criminal prosecution and simultaneously represented the plaintiffs in a civil suit arising from the same incident. In *Jones*, however, the public prosecutor retained control over discretionary functions, and there was no evidence of the private prosecutors' using their position to exact a more generous settlement in the civil case. While the court did not endorse private prosecutors also being involved in a civil case, it found that the level of involvement in that case did not constitute a due process violation.

*eral Rules of Criminal Procedure*, 54 Fordham L.Rev. 1141, 1158–59 (1986); Andrew Sidman, Note, *The Outmoded Concept of Private Prosecution*, 25 Am.U.L.Rev. 754, 793 (1976). This heightened concern stems from the recognition that the discretionary functions of the district attorney general are, in a sense, more difficult to review than everyday trial practice. Prudence dictates that courts be most vigilant with regard to situations involving the potential for abuse which tend to evade judicial review through ordinary means. Thus, whereas improper trial conduct of private counsel is subject to review in much the same way as the trial conduct of an overzealous public prosecutor, the participation by private counsel in the discretionary functions of the district attorney general is of greater concern because of not only the ethical dilemma faced by private counsel *but also* the inherent inadequacy of judicial review of potential abuses of those discretionary functions by private counsel. It is therefore my belief that the degree of participation of private counsel in a prosecution has great significance regardless of whether private counsel is retained only to participate in the prosecution or represents the victim in a civil suit as well.

If, in the case *sub judice*, private legal counsel had participated in this trial by being seated at counsel table with the assistant district attorney, advising with the assistant district attorney during the course of the trial, and even participating in some questioning of some of the witnesses, I do not believe the Defendant's due process rights would necessarily have been violated. However, if private legal counsel had not participated in the trial at all, but the office of the district attorney general had deferred totally to private legal counsel on the issue of a plea agreement, I believe the Defendant's due process rights would have been violated.

Here, I conclude that the district attorney general failed to retain adequate control of the prosecution. It appears that the control of the criminal prosecution was totally relinquished to the attorneys representing the victim in a pending civil law suit arising from the same incident. The "special prosecutors" apparently communicated with defense counsel concerning a substantial cash settlement of the civil case in conjunction with a possible plea agreement in the criminal case.[4] I concur that the degree of involvement of these "special prosecutors" went beyond the role of "co-counsel" at trial as anticipated by our legislature and violated the Defendant's due process rights *and* was prejudicial to the judicial process. I, therefore, agree that this case must be reversed and remanded for a new trial.

---

4. It is readily apparent that discussions of a cash settlement of a civil suit in conjunction with resolution of a criminal prosecution provide a significant and alarming setting for abuse.