## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

SEPTEMBER SESSION, 1999



FILED

December 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,      *

      Appellee,      *

                 *

vs.      *

                 *

DAVID ALLEN VAUGHN,      *

      Appellant.      *

No. W1999-01647-COA-R3-CD

SHELBY COUNTY

Hon. James C. Beasley, Jr., Judge

(Attempted Second Degree Murder)

For the Appellant:

**W. Mark Ward**
Asst. Public Defender
Suite 2-01, 201 Poplar Ave.
Memphis, TN 38103

**A C Wharton**
District Public Defender

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**J. Ross Dyer**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**William L. Gibbons**
District Attorney General

**Ms. Phyllis Gardner**
**Ms. Karen Cook**
Asst. District Attorney General
Shelby County Dist. Atty. General's Office
201 Poplar Avenue - Third Floor
Memphis, TN 38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes,** Judge

**OPINION**

The appellant, David Allen Vaughn, appeals his conviction by a Shelby County jury for the offense of attempted second degree murder. In this appeal as of right, the appellant raises the following issues for review:

I. Whether attempted second degree murder exists as a criminal offense in this state;

II. Whether the trial court erred in refusing to instruct the jury that the offense of attempted second degree murder requires the specific intent to kill; and

III. Whether the trial court's instructions to the jury as to the elements of the offense of attempted second degree murder constitute error.

After review, we affirm the judgment of the trial court.

**Background**

Although the issues raised by the appellant present questions of law, we note briefly the following undisputed facts established at trial. On June 5, 1997, Memphis Police Officers responded to a request for emergency assistance at the residence of the appellant. Upon their arrival, the officers discovered pieces of the victim's skull and pieces of brain tissue on the floor, blood splattered throughout the residence, and a bloody aluminum baseball bat under one of the beds.[1]

The appellant informed law enforcement officers that "he had hit his girlfriend in the head with a baseball bat" and that "he thought that he hurt her real bad." Subsequently, after his arrest and after waiving his rights, the appellant provided a more detailed statement, which related the following information: The appellant had been living with Carey Doty for seven years and they had a four year old son together. On June 5, 1997, the appellant and Ms. Doty had an altercation during which the appellant struck Ms. Doty three or four times on the head with a baseball

---

[1]Although the victim survived the attack, she remained hospitalized for approximately four months after the beating. She sustained severe skull and brain damage. "[H]er skull is being reconstructed piece by piece . . . in an effort to try to restore some normalcy just to her face and to the configuration of her skull." "She lost an eye . . . [and] literally lost a portion of her brain." In addition to the severity of the physical injuries, the victim is totally disabled and is in the custody and care of her parents. She is no longer able to care for her son. She has had extensive speech therapy in order to relearn her communication skills. Additionally, she has undergone extensive amounts of reconstructive surgery and faces additional surgical procedures in the future.

bat. The appellant explained that:

> Carrie [sic] and I were walking around the house talking. I asked Carrie [sic] where my bat was and she asked why and I told her so I could play ball with my son. She said something that struck me wrong, she smarted off. I turned around and struck her with the bat and then I struck her a couple of more times. I threw the bat down in the other room and got in the car and left. I went to my mother's house and called my mother at work and told her what happened. I told her I was fixing to take the gun and shoot myself and she told me not to do that.
> . . .

Based upon this evidence, the jury found the appellant guilty of attempted second degree murder.

## I. Validity of Offense of Attempted Second Degree Murder

Relying upon our supreme court's decision in State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996), the appellant contends that "there is no such criminal offense of attempted second degree murder in the state of Tennessee." In State v. Kimbrough, the supreme court held that the offense of attempted felony murder does not exist in Tennessee, as "it is logically and legally impossible to attempt to perpetrate an unintentional killing." Kimbrough, 924 S.W.2d at 892. Utilizing this holding, the appellant submits, by analogy, that the "intent" requirements of the attempt statute cannot be combined with the lesser mental state of "knowing." We reject the appellant's argument.

In State v. Kimbrough, the supreme court observed that, because the intent required for an attempt is an intent to commit the contemplated crime, attempt to commit murder requires a specific intent to kill. Kimbrough, 924 S.W.2d at 891.

The court suggested that the statutory provision on criminal attempt is inapplicable to any crime requiring less than a specific intent. See generally Tenn. Code Ann. § 39-12-101(a)(1), (2), (3) (1997). Accordingly, the court held that the specific intent required by the criminal attempt statute was inconsistent with the requisite felony murder mental state of "reckless" because one cannot intend to commit an unintentional, i.e., reckless, act. State v. Rodney D. Palmer, No. 02C01-9804-CR-00111 (Tenn. Crim. App. At Jackson, Jul. 8, 1999) (citing Kimbrough, 924 S.W.2d at 890). Notwithstanding this conclusion, the court observed that "if an accused

3

actually possesses the requisite intent to kill, he or she may be charged with attempted murder." <u>Kimbrough</u>, 924 S.W.2d at 892.

Indeed, there is a difference between the mental states of intentional and knowing as distinguished from reckless and criminal negligence. <u>See</u> <u>State v. Dale Nolan</u>, No. 01C01-9511-CC-00387 at n.9 (Tenn. Crim. App. at Nashville, Jun. 26, 1997), <u>perm. to appeal denied</u>, (Tenn. Mar. 2, 1998). The *mens rea* of both intentional and knowing involve a level of conscious awareness and volitional, affirmative conduct, whereas, the mental states of reckless and criminally negligent contemplate a disregard of the situation and unintentional conduct or failure to act. <u>Id.</u> at n.9; <u>see also</u> <u>State v. Rodney D. Palmer</u>, No. 02C01-9804-CR-00111. Thus, homicides requiring a mental state of "intentional" or "knowing" require the "intent to kill."

"Second degree murder is a <u>knowing</u> killing." Tenn. Code Ann. § 39-13-210 (1997). "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. <u>See</u> Tenn. Code Ann. § 39-11-302(b)(1997). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. <u>Id.</u> One commits second degree murder if one knowingly tries to kill another and succeeds in doing so. <u>See</u> <u>State v. Craig Bryant</u>, No. 02C01-9707-CR-00286 (Tenn. Crim. App. at Jackson, Jan. 8, 1999), <u>perm. to appeal denied</u>, (Tenn. Jun. 14, 1999). Accordingly, attempted second degree murder may be proven by showing that the defendant "intentionally acted with the requisite culpability to commit the offense of murder in the second degree" and the defendant "could have been convicted of murder in the second degree . . . if he had actually killed the victims." <u>State v. Dale Nolan</u>, No. 01C01-9511-CC-00387 (citations omitted). In accord with prior decisions of this court, we conclude that Tennessee's attempt statute is applicable to the offense of second degree murder. <u>See, e.g.</u>, <u>State v. Eldridge</u>, 951 S.W.2d 775 (Tenn. Crim. App. 1997); <u>State v. Rodney D. Palmer</u>, No. 02C01-9804-CR-00111; <u>State v. Craig Bryant</u>, No. 02C01-9707-CR-00286; <u>State v. Jose Holmes</u>, No. 02C01-9505-CR-00154 (Tenn. Crim. App. at Jackson, Dec. 10, 1997), <u>perm. to appeal denied</u>, (Tenn. Sept. 21, 1998); <u>State v. Cecil Skidmore</u>, No.

4

03C01-9502-CR-00039 (Tenn. Crim. App. at Knoxville, Apr. 24, 1997); State v. Timothy Jenkins, No. 01C01-9508-CC-00269 (Tenn. Crim. App. at Nashville, Nov. 15, 1996). This issue is without merit.

## II. Jury Instructions

Next, we address the appellant's related issues involving jury instructions. At trial, the appellant submitted a special instruction, requesting that the trial court inform the jury that in order to be guilty of attempted second degree murder, the defendant must have had the specific intent to "kill." The trial court denied the request. The appellant now contends that the trial court erred because: (1) the jury was instructed that it could find the offense based on the intent to commit a "knowing" homicide and (2) the court failed to instruct the jury that in order to find the offense the defendant must have "intended" the killing.

In the present case, the trial court instructed the jury:

Any person who attempts to commit a criminal offense is guilty of a crime.

For you to find a person guilty of criminal attempt, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the <u>defendant acted intentionally and knowingly to commit the specific offense of murder second degree</u> . . .
and
(2) (a) that the defendant intentionally engaged in action or caused a result that would constitute murder second degree . . . if the circumstances surrounding the conduct were as the person believed them to be;
or
   (b) that the defendant acted with intent to cause a result that is an element of the offense of murder second degree . . . and believed the conduct would cause the result without further conduct on his part;
or
   (c) that the defendant acted with intent to complete a course of action, or cause a result that would constitute murder second degree . . . under the circumstances surrounding the conduct as the person believed them to be, and the conduct constituted a substantial step toward the commission of murder second degree . . . defendant's action does not constitute a substantial step unless the defendant's entire course of action is corroborative of the intent to commit the offense.

The court additionally instructed the jury as to the elements of second degree murder:

5

> For you to find the defendant guilty of [second degree murder], the state must have proven beyond a reasonable doubt the existence of the following essential elements:
> (1) that the defendant unlawfully killed the alleged victim; and
> (2) that the defendant acted knowingly.

(emphasis added).

This instruction is almost verbatim Tennessee pattern instruction 4.01 on attempt. See T.P.I. – Crim. 4.01 (4th ed. 1995). In State v. Eldridge, this court approved the language in the fourth edition of the pattern jury instruction as the instruction "expressly includes the defendant's intent to commit the specific offense as an essential element." 951 S.W.2d at 779. This holding is in accord with State v. Kimbrough, which holds that an attempt to commit murder requires a specific intent to kill. Eldridge, 951 S.W.2d at 779 (citing Kimbrough, 924 S.W.2d at 891). See also State v. Rodney D. Palmer, No. 02C01-9804-CR-00111. Accordingly, we conclude that the trial court did not err in its instructions to the jury. The appellant's challenges to the jury instructions are without merit.

In accordance with our supreme court's holding in State v. Kimbrough and consistent with previous decisions of this court, we conclude that no error of law exists requiring reversal. The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
THOMAS T. WOODALL, Judge

6