RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0205P (6th Cir.)
File Name: 03a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

FABIEN ELDRIDGE,
    *Plaintiff-Appellant,*

    *v.*

WILLIAM E. GIBSON, DAVID
DAY, ROBERT DURHAM,
MICHAEL H. KNOWLTON, and
SAM LEE,
    *Defendants-Appellees.*

No. 01-6136

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 95-00033—William J. Haynes, Jr., District Judge.

Argued: March 11, 2003

Decided and Filed: June 19, 2003

Before: NELSON, COLE, and GILMAN, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Rick Halprin, Chicago, Illinois, for Appellant. Martha A. Campbell, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Samuel D. Payne, EVANS, JONES & REYNOLDS, Nashville, Tennessee, Jon

E. Jones, LAW OFFICE OF JON E. JONES, Cookeville, Tennessee, Daniel H. Rader III, MOORE, RADER, CLIFT & FITZPATRICK, Cookeville, Tennessee, for Appellees. **ON BRIEF:** Rick Halprin, Chicago, Illinois, Chantal M. Eldridge, Cookeville, Tennessee, for Appellant. Martha A. Campbell, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Samuel D. Payne, Winston S. Evans, EVANS, JONES & REYNOLDS, Nashville, Tennessee, Jon E. Jones, LAW OFFICE OF JON E. JONES, Cookeville, Tennessee, Daniel H. Rader III, Richard Lane Moore, MOORE, RADER, CLIFT & FITZPATRICK, Cookeville, Tennessee, for Appellees.

    GILMAN, J., delivered the opinion of the court. NELSON, J. (pp. 7-9), delivered a separate opinion concurring in the judgment. COLE, J. (pp. 10-12), delivered a separate opinion concurring in part and dissenting in part.

———————————

### OPINION

———————————

    RONALD LEE GILMAN, Circuit Judge. In May of 1995, Fabien Eldridge brought this action for damages under 42 U.S.C. § 1983 against the following defendants: William E. Gibson, District Attorney General for the Thirteenth Judicial District of Tennessee; David Day, a private attorney; Robert Durham, a private attorney; Michael Knowlton, a private attorney; and Sam Lee, a deputy sheriff for Putnam County, Tennessee. District Attorney Gibson and Deputy Sheriff Lee were sued in both their individual and official capacities.

    Eldridge's claims arise out of his state criminal prosecution that initially resulted in a second-degree murder conviction. The conviction, however, was subsequently vacated on appeal, *State v. Eldridge*, 951 S.W. 2d 775 (Tenn. Crim. App. 1997), and the case against him was dismissed on remand. Specifically, Eldridge claims that the state's appointment of Day, Durham, and Knowlton (the private-attorney defendants)

to serve as special prosecutors in his criminal trial violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The private-attorney defendants not only served as special prosecutors, but also represented the crime victim in a civil action for damages against Eldridge.

Shortly after Eldridge filed his initial complaint, all of the defendants filed motions to dismiss. Gibson and Lee also filed motions for summary judgment. Judge Morton stayed discovery and granted the defendants' motions to dismiss on the ground that Eldridge's complaint was premature under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that, to recover damages, a § 1983 plaintiff raising a malicious-prosecution-type claim must prove that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus"). Upon Eldridge's motion for reconsideration, Judge Morton vacated his prior ruling for the limited purpose of considering Eldridge's § 1983 claim for abuse of process, and issued an order to show cause why Lee should not be dismissed as a defendant. Eldridge filed a response to the show-cause order and further requested that the court take judicial notice of numerous exhibits from his criminal trial. At that point, Judge Morton stayed the case pending the disposition of Eldridge's criminal appeal.

In October of 2000, Eldridge petitioned the district court to reopen the case because the criminal proceeding against him had been dismissed. Eldridge simultaneously filed a Notice of Voluntary Non-Suit against Lee and a motion for summary judgment against Gibson and the private-attorney defendants. On August 3, 2001, Judge Haynes (who had taken over the case following Judge Morton's death) entered an order denying Eldridge's motion for summary judgment and dismissing Eldridge's complaint against all of the defendants with prejudice.

Judge Haynes's 31-page opinion offers a thorough explication of the law applicable to this case and reaches the correct result. After independently researching and analyzing the issues presented, I am convinced that Judge Haynes's opinion provides a cogent and exhaustive analysis that would not be further elucidated by a rehashing of the issues here.

In short, as Judge Haynes has explained, defendants Gibson, Day, Durham, and Knowlton are entitled to absolute immunity from suit because of the prosecutorial nature of their actions in question. Eldridge argues that the fact that the special prosecutors were paid by the victim rather than the state makes the special prosecutors ineligible for prosecutorial immunity. As the district court correctly noted, however, this is not the correct inquiry. Under Supreme Court precedent, the test for determining if absolute prosecutorial immunity is appropriate turns on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

The dissent acknowledges that the functional test is the appropriate analysis, but concludes that the actions of the special prosecutors in this case "were not merely in the context of a state criminal trial, but also in the context of a private civil trial." According to the dissent, some of the prosecutorial actions taken by the special prosecutors in the criminal trial might have been "motivated by the civil ramifications," which in the dissent's opinion would then make those actions not prosecutorial in nature for purposes of the functional test. But this reasoning requires precisely the type of inquiry into motive that the doctrine of absolute immunity is intended to prevent. As this court has previously held, "absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions." *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) (holding that the prosecutor was entitled to absolute immunity notwithstanding alleged political motivations for his actions); *cf Mowbray v. Cameron Co., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001) ("It is a well established rule that where a judge's absolute immunity would protect him from liability for the

performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity."). Courts have found this protection necessary because of the fact that retaliatory suits by defendants "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Imbler v. Pachtman*, 424 U.S. 409, 425-26 (1976).

Both the dissenting and concurring opinions correctly point out that we have never before been confronted by a situation where the prosecutor was simultaneously handling a civil case against the defendant. Although the potential conflict of interest this creates may well be unwise, as the state of Tennessee recognized after Eldridge's criminal conviction was overturned on this ground, the test for determining whether absolute immunity applies for the purposes of § 1983 remains the same even in the face of unsound policy. I therefore agree with the district court that the special prosecutors were in fact functioning as prosecutors during the criminal trial, and decline to inquire into whether the potential conflict of interest inherent in this situation resulted in the prosecutors having improper motives in so doing.

Eldridge's argument that the Thirteenth Judicial District is a "person" subject to suit under § 1983 also fails because, as Judge Haynes discussed, the Thirteenth Judicial District is clearly a branch of the state and as such is protected from suit by the Eleventh Amendment. We further conclude that the district court's dismissal of Eldridge's Fourth, Fifth, and Sixth Amendment claims was supported by the record. Moreover, whether the dismissal of these claims was erroneous or not is irrelevant in light of the district court's subsequent immunity analysis. Finally, the district court did not abuse its discretion in dismissing the claims against Lee with prejudice, particularly given the state court's analysis of Lee's actions and the fact that Lee's pending motion for summary judgment precluded Eldridge from voluntarily dismissing his lawsuit without prejudice. Fed. R. Civ. Pro. 41(a).

The judgment of the district court is therefore **AFFIRMED** for all of the reasons set forth above.

---

## CONCURRENCE

---

DAVID A. NELSON, Circuit Judge, concurring in judgment. Although I concur in the court's judgment, my rationale differs in part from that employed in the lead opinion.

Whether the doctrine of absolute immunity should be extended to private contingent-fee lawyers employed by a crime victim to carry a second brief as "special prosecutors" under T.C.A. § 8-7-401 is a question both novel and (for me, at least) difficult. It is true that such lawyers perform a prosecutorial function – and if that were the end of the story, there would be no question about their entitlement to absolute immunity. It is also true, however, that in addition to functioning as prosecutors, they function as counsel in a private action for damages. As the Tennessee Court of Criminal Appeals demonstrated convincingly in *State v. Eldridge*, 951 S.W.2d 775 (1997), such special prosecutors have "inherent conflicts of interest" that are both "obvious and irreconcilable." *Id*. at 783.

In the very nature of things, the role of a special prosecutor under T.C.A. § 8-7-401 invites the contingent-fee lawyer who assumes that role to employ the coercive force of the state's criminal justice machinery for an illicit purpose – squeezing the defendant in the criminal case until he coughs up enough money to satisfy the plaintiff in the private lawsuit. A plausible argument can be made, it seems to me, that for the private lawyer to act as a special prosecutor under the circumstances presented here is *ipso facto* to engage in an unconstitutional abuse of process. And if that argument were to be accepted, it would be hard for me to discern any rational justification for extending absolute immunity to the special prosecutor.

Be that as it may, I find it unnecessary to reach a firm conclusion on the absolute immunity issue. If the doctrine of absolute immunity does apply in a situation such as this, that is the end of the matter as far as the private-attorney defendants are concerned. If the absolute immunity doctrine does not apply, the question shifts to whether the private attorneys are entitled to dismissal on qualified immunity grounds. I believe they are – so at the end of the day, it seems to me, the private attorneys ought to prevail one way or the other.

Under the doctrine of qualified immunity, officials performing discretionary functions of the sort at issue here "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This entitlement to be shielded from liability, as the Supreme Court made clear in a subsequent case, is not simply a "defense to liability;" it is "an *immunity from suit* . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In analyzing qualified immunity claims, we are normally constrained to follow a rigid sequence: first we ask whether a constitutional right would have been violated on the facts alleged, and only if that question is answered in the affirmative do we ask whether the constitutional right was clearly established. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001). An important reason – if not the sole reason – for turning first to the existence or nonexistence of a constitutional right is that "the law's elaboration from case to case" might suffer "were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful . . . ." *Id*.

Given the divergent positions taken by my colleagues on the panel in this particular case, I believe I am free to skip ahead to the easy question of whether the special prosecutors acted in violation of a right that was clearly established, thus declining to answer the difficult question of whether Fabien

Eldridge had a constitutional right not to be prosecuted criminally by contingent-fee lawyers who were also suing him civilly. Neither of my colleagues having answered the latter question, I would not be speaking for the court if I ventured to pontificate on how the issue should be resolved – and the world would still be without a definitive elaboration of the relevant law.

If the right claimed by Mr. Eldridge existed at all, I obviously do not believe it was clearly established. At the time of Eldridge's prosecution a Tennessee statute explicitly allowed crime victims to employ private legal counsel to act as special prosecutors, and there was no judicial decision teaching that it would be a constitutionally impermissible abuse of process under federal law for Eldridge's lawyers in the tort case to accept appointment as special prosecutors and to function as such under the authorization of the statute. On that narrow ground, and being satisfied that the private-attorney defendants would ultimately have to prevail if this case were to be remanded for further proceedings, I am content to concur in the judgment announced by the lead opinion with respect to the dismissal of the private-attorney defendants. Like Judge Cole, I concur in both the judgment and the opinion as far as the remaining issues are concerned.

## CONCURRING IN PART, DISSENTING IN PART

R. GUY COLE, JR., Circuit Judge, concurring in part and dissenting in part. I concur in the lead opinion with regard to each issue except for the grant of absolute immunity to the special prosecutors; on that issue only, I respectfully dissent.

I find the district court's rationale for granting absolute immunity, upon which the lead opinion relies, to be unpersuasive.

Eldridge asserts that Tennessee Code § 8-7-401 does not provide for any immunities to private legal counsel appointed pursuant to this statute, and argues that the legislative omission of any mention of immunities is not an error, but an intentional distinction between privately employed attorneys permitted to participate in criminal prosecutions at the District Attorney's discretion, and individuals appointed and employed by the State pursuant to T.C.A. § 8-7-106.

In support of this proposition, Eldridge quotes from § 8-7-106, which states that a district attorney pro tem, appointed in the absence of a District Attorney, shall be entitled to the same privileges and emoluments. Thus, Eldridge juxtaposes these two statutory provisions to demonstrate that the Tennessee legislature would have provided a similar entitlement to private counsel under § 8-7-401 had immunity for such attorneys been desired.

The district court stated that § 8-7-106, "does not grant or refer to any immunity, only privileges of office." This is unpersuasive, however, because, in my view, absolute immunity would properly be considered a privilege of office. The district court cites no authority to the contrary.

In addition, the district court asserted that under *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980), state law does not control resolution of federal § 1983 actions. This appears

to be a fair reading of the implication of *Martinez*. However, this factor cuts both ways. If state law does not control, then the fact that the private attorneys were appointed pursuant to a state statute also cannot control - but the district court heavily relied on this factor.

I am unaware of any instance in which a federal court has granted absolute immunity to private attorneys acting as prosecutors in a criminal case while simultaneously representing the crime victim civilly. It is true that this Court has taken a functional approach to absolute immunity, assessing the "nature of the function performed, not the identity of the actor who performed it" in determining whether to grant absolute immunity. *See Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). Using this approach, we have concluded that a prosecutor is protected "in connection with his duties in functioning as a prosecutor." *Id.*

Applying the functional approach, the district court stated that the private attorneys "acted as prosecutors in representing the state in a criminal case, arguing pretrial and trial matters. These are the inherent functions of a prosecutor and these functions were in the context of a state criminal trial." The district court concluded, "Thus, applying the function analysis . . . the private Defendants were state prosecutors and are also entitled to absolute immunity for their work on Plaintiff's criminal trial."

Were the attorneys in question functioning solely as special prosecutors, this analysis would surely be correct. The problem here, however, is that these functions were not merely "in the context of a state criminal trial," but also in the context of a private civil trial. The Tennessee Court of Criminal Appeals noted a number of important considerations in this regard that are relevant to the conflict of interest in this case. "The responsibility of a public prosecutor differs from that of the usual advocate in that it is the public prosecutor's duty to seek justice, not merely to convict." *State v. Eldridge*, 951 S.W.2d 775, 781 (Tenn. Cr. App. 1997). At the same

time, "[a]s zealous advocates representing the victim in the civil case, counsel would best serve the victim by securing a criminal conviction." *Id.* at 783. Among other troubling issues, there was an unresolved factual dispute regarding whether the special prosecutors had offered to settle both the civil and criminal proceedings for a sum certain, and it was apparent that payment of a sum of money for a civil settlement would have resulted in a favorable recommendation by the special prosecutors in the criminal matter. *See id.* "[T]he special prosecutors certainly had a direct interest in the outcome." *Id.*

Because of these conflicts, I do not think it can fairly be said that the private attorneys were at all times functioning as state prosecutors, because all of their actions in the context of the criminal trial were inextricably intertwined with their civil functions. Accordingly, the functions of prosecutor and zealous civil advocate are inseparable here. Thus, the district court's functional analysis was incomplete.

I would find that the private attorneys are not entitled to absolute immunity because they functioned simultaneously as both prosecutors and private civil advocates, and would remand this issue to the district court to determine in the first instance whether these attorneys were entitled to qualified immunity.