STATE of Tennessee, Appellee,

v.

**Virginia GONZALES, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 28, 1982.

Permission to Appeal Denied By Supreme Court Sept. 20, 1982.

Thos. Boyers, IV, Gallatin, for appellant.

William M. Leech, Jr., Atty. Gen., J. Andrew Hoyal, II, Asst. Atty. Gen., Nashville, Ray Whitley, Dist. Atty. Gen., Gallatin, for appellee.

## OPINION

TATUM, Judge.

The appellant, Virginia Gonzales, appeals from a perjury conviction for which she was sentenced to a term of not less than 1 year nor more than 3 years in the State penitentiary. On this appeal, the appellant attacks the sufficiency of the evidence, alleges that the action of the grand jury in returning its presentment was irregular due to the presence of the District Attorney General in the grand. jury room, alleges that the trial

judge permitted the violation of the witness sequestration rule, and alleges that the trial judge abused his discretion in denying probation. After reviewing the record, we have concluded that the judgment of conviction must be affirmed.

The appellant was convicted of giving false testimony to the Sumner County grand jury in October, 1979. The false testimony of the appellant resulted in the grand jury returning a presentment against Robert Joslin and his wife, Peggy N. Joslin, charging them with the crime of arson.

The foreman and a member of the grand jury that returned the arson presentment against Mr. and Mrs. Joslin were witnesses for the State. They testified that the appellant appeared before the Sumner County grand jury on October 10, 1979, and, after being duly sworn, testified in substance as follows:

She stated that she was formerly employed by the Valley Hardware Store in Sumner County. The owner, Mr. Robert Joslin, offered to pay her one-third of the insurance proceeds on the hardware store building if she would set the building on fire. She testified to the grand jury that Mr. Joslin told her that all preparations for ignition would be made for her and that all she had to do was to plug in an electric fan. She testified that Joslin had instructed her that after a delay sufficient for her to leave the building, the plugging in of the fan would ignite the building. She testified that Mrs. Joslin telephoned her before the fire and thanked her for her cooperation in burning the building. The appellant further told the grand jury that she entered the building and plugged in the fan as instructed. However, the fire started immediately and she was severely burned before she could leave the building.

Mr. and Mrs. Robert Joslin testified at the appellant's trial that they were awakened the night of August 23, 1979, and learned that the store building was on fire. The appellant had been working for Mr. Joslin for about 6 months as a "computer in-put operator" and later as a bookkeeper. Mr. Joslin testified that money was being stolen from his store and that he had started an audit about 7 days before the fire. Both Mr. and Mrs. Joslin denied procuring the appellant to start the fire or of having any knowledge that the building was to be burned.

Gary Chappell and J. K. Parrish, fire investigators, testified that they interviewed the appellant sometime after the fire. At the time of the interview, they had no doubt that the appellant was in the building when the fire was started as she was hospitalized with severe burns and the company truck which she was using was seen parked at the hardware store on the night of the fire. However, the investigators thought that other persons were also involved and suggested to the appellant that she might be given immunity, on condition that she testify truthfully. The appellant gave Chappell and Parrish a detailed statement, the substance of which was the same as the evidence she gave to the grand jury.

Further investigation revealed several facts inconsistent with the initial statement given by the appellant to the investigators and to the grand jury. On the evening before Mr. and Mrs. Joslin were scheduled to be tried for arson, Chappell and Parrish met with the appellant and prosecuting officials in preparation for trial. When the appellant was confronted with the fact that the electric fan was too far from the recepticle to plug in without an extension cord and that no remnants of an extension cord were found, the appellant changed her version of the events by saying that she ignited the fire with a match.

After conducting further investigation, the night before the Joslins were to be tried, Chappell and Parrish telephoned the appellant and confronted her with other facts inconsistent with her previous version. At this time, the appellant told the investigators that Mr. Joslin did not know that the store was going to be burned on the night

of August 23, 1979. She told them that though Joslin had planned to burn the building, she took it upon herself to do it that night.

The next morning, before court convened, the investigators and prosecutors had another conference with the appellant. On this occasion, she told them that Mr. and Mrs. Joslin had nothing to do with starting the fire. She said that she had ordered the accelerants without Joslin's knowledge and that Joslin did not know she was going to burn the store. She told them that she poured 10 gallons of lighter fluid and 2 gallons of paint thinner on the floor before igniting it with matches. When the accelerants were ignited, "the place blew up," caught fire, and the appellant was severely burned about the head and arms.

When court convened to begin the trial of Mr. and Mrs. Joslin, their case was dismissed on motion of the District Attorney General.

The appellant contends in Issue numbers 1 and 3 that her conviction cannot stand because there is no proof in the record showing which of two contradictory statements made by her were false. Her argument is that the State failed to show that her sworn testimony to the grand jury was false and not the unsworn statements that she gave to the investigators. She relies upon *Paytes v. State*, 137 Tenn. 129, 191 S.W. 975 (1916), a case decided prior to the enactment of T.C.A. § 39–3303. In the *Paytes* case, the defendant had testified to a grand jury that he had bought whiskey from a certain person and during the trial of that person, Paytes testified that he did not buy whiskey from him. No evidence was introduced to show which of the two accounts were false. The Supreme Court held that when contradictory testimony is established, the State must show which is false by some corroboration, "such as the oath of one witness or circumstances tending fairly to show the truth of the version relied upon to establish that the oath to the opposite was false."

In the case *sub judice*, the truth of the appellant's grand jury testimony is refuted by the testimony of both Mr. and Mrs. Joslin and also by the circumstances described by the investigators which are inconsistent with the facts given by the appellant to the grand jury. The appellant insists that the testimony of Mr. and Mrs. Joslin cannot be considered under the circumstances of this case. We disagree; in all cases the issue of credibility of witnesses is primarily that of the trier of fact, i.e., the jury. *Houston v. State*, 593 S.W.2d 267 (Tenn.1980).

The evidence that appellant's testimony before the grand jury violated T.C.A. § 39–3301 is overwhelming; it is not disputed by defense evidence. The evidence of guilt more than meets the standard required by Rule 13(e), T.R.A.P. Issues 1 and 3 are without merit.

In the next issue, the appellant complains of the District Attorney General and at least one of his assistants being in the grand jury room. The record does not indicate that any member of the Attorney General's staff was in the grand jury room during voting or deliberation or examination of witnesses, but we glean that they gave unsworn testimony to the grand jury. The nature of the testimony given is not disclosed by the record; however, we note that the District Attorney General and members of his staff were present on at least 2 occasions when the appellant recanted the testimony she gave to the grand jury against Mr. and Mrs. Joslin.

We first note that the presentment was not first attacked by pretrial motion as required by Rule 12(b)(1) and (2) T.R.Cr.P. However, since the procedural matter was not raised in the trial, we have elected to consider the issue on its merits. The appellant relies upon *Tiller v. State*, 600 S.W.2d 709 (Tenn.1980) and Rule 6(h)(1), T.R.Cr.P. as authority for her insistence that the District Attorney cannot be in the grand jury

room.[1] While these authorities stand for the proposition that a District Attorney and his assistants may not properly be in the grand jury room to examine other witnesses, we do not understand that a District Attorney cannot appear before the grand jury to give substantive evidence. See *Parton v. State,* 2 Tenn.Cr.App. 626, 455 S.W.2d 645 (1970). There is no showing that the District Attorney and his assistant were in the grand jury room at the same time.

We hold that a presentment or indictment is not invalidated because the grand jury heard testimony from an unsworn witness. It is axiomatic that indictments may be founded on hearsay testimony. *Gammon v. State,* 506 S.W.2d 188 (Tenn.Cr.App.1973); *Casey v. State,* 491 S.W.2d 90 (Tenn.Cr.App.1972); *Parton v. State, supra.* If a sworn witness can obtain an indictment on evidence related to the witness by an unsworn third person, then it necessarily follows that evidence given directly to the grand jury by an unsworn witness will also support an indictment.

Moreover, indictments are not open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury to support it. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Parton v. State, supra; Burton v. State,* 214 Tenn. 9, 377 S.W.2d 900 (Tenn.1964). The legality of evidence heard by a grand jury is not subject to judicial review. An indictment returned by a grand jury, if valid on its face, is enough to call for trial of the charge on the merits. *State v. Northcutt,* 568 S.W.2d 636 (Tenn.Cr.App.1978); *Parton v. State, supra; Burton v. State, supra.*

In this connection, the appellant also complains of evidence indicating that the District Attorney or his assistants gave the grand jury an opinion as to "what charge should be brought" in the presentment. This is in the nature of legal advice which the District Attorney can properly give to the grand jury. *Tiller v. State, supra.* Issue number 2 is without merit.

The appellant next complains that the witness, Investigator Chappell, was permitted to remain at the counsel table with the District Attorney prior to his testifying, though the rule of sequestration had been called for. The record indicates that Mr. Chappell was the chief investigating officer in the case and, for this reason, the District Attorney desired his presence during the trial. In *Hughes v. State,* 126 Tenn. 40, 148 S.W. 543 (1912), the Supreme Court held that a detective who had assisted the District Attorney in preparing a case "would fall within the same exceptions which protect the officers of a corporation." The Supreme Court held in *Lenoir Car Company v. Smith,* 100 Tenn. 127, 42 S.W. 879 (1897), "that the officer of a corporation, charged with the duty of looking after its interest in a pending trial, falls within the spirit of the Act in question." The act "in question" was T.C.A. § 24–1–204 which excludes parties to a suit from the rule of sequestration of witnesses. Also see *Chamberlain v. Aetna Life and Casualty Insurance Company,* 593 S.W.2d 661 (Tenn.1980). This case is distinguishable from *Sparks v. State,* 563 S.W.2d 564 (Tenn.Cr.App.1978) wherein a sheriff was permitted to remain in the courtroom only on the ground that he was the constitutional officer of the county. In *Sparks,* there was no showing that the sheriff investigated the case or could have assisted the District Attorney in the conduct of the trial.

In the case *sub judice,* Detective Chappell, while not the first witness for the State, was the first witness on the subject matter of his testimony. If error was committed, it was unprejudicial and technical only. *Mothershed v. State,* 578 S.W.2d 96 (Tenn.Cr.App.1978).

Finally, the appellant insists that the trial judge abused his discretion in de-

---

1. The *Tiller* holding was modified by Chapter 419, Public Acts of 1981.

nying probation. The appellant has an extensive criminal record dating from 1956 through 1977. It reflects a long history of the appellant of committing offenses involving fraudulent checks, fraudulent credit cards and dishonesty in general. The trial judge denied probation because of the appellant's previous criminal record, the magnitude of this offense, and the lack of showing of rehabilitation.

The appellant did not testify at the probation hearing and offered no evidence. There is no evidence that she is a proper subject for rehabilitation and she has failed to bear the burden of proof that she is entitled to a probated sentence. See *Frazier v. State*, 556 S.W.2d 239 (Tenn.Cr.App. 1977). All three grounds upon which the trial judge denied probation are valid. He properly denied probation.

The judgment of the Criminal Court is affirmed.

DUNCAN and CORNELIUS, JJ., concur.