## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

#### FEBRUARY 1999 SESSION



FILED

March 09, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9805-CR-00145 |
| Appellant, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. L. T. LAFFERTY, |
| DONALD L. CULBREATH | ) | JUDGE |
| and GENNA MCCALLIE, | ) | |
| | ) | |
| Appellees. | ) | (Prostitution and Obscenity-Related |
| | ) | Offenses) |

**FOR THE APPELLEES:**

THOMAS E. HANSOM
659 Freeman
Memphis, TN 38122-3728

FRIERSON M. GRAVES, JR.
165 Madison, Ste. 2000
Memphis, TN 38103-2723

**FOR THE APPELLANT:**

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

AMY P. WEIRICH
JENNIFER S. NICHOLS
Asst. District Attorneys General
Criminal Justice Complex, Ste.301
201 Poplar Avenue
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

**JOE G. RILEY,**
**JUDGE**

## O P I N I O N

The state appeals as of right an order of the Criminal Court of Shelby County disqualifying the District Attorney General and his staff and dismissing the prostitution and obscenity-related indictments against the defendants.[1] The issues presented for our review are:

> (1)     whether the trial court erred in disqualifying the entire Shelby County District Attorney General's Office, as well as a special assistant appointed to aid in the prosecution of sexually oriented businesses; and

> (2)     whether the trial court erred in dismissing the indictments.

This appeal presents an issue of first impression in Tennessee; namely, whether a private attorney, specially appointed to assist the District Attorney General in the prosecution of sexually oriented businesses, should be disqualified from prosecutorial participation if the attorney receives substantial compensation from a private, special interest group. We conclude that the facts and circumstances of this case require disqualification. Therefore, we **AFFIRM** the trial court's disqualification of the Shelby County District Attorney General and his staff, including the specially appointed prosecutor; however, we **REVERSE** the order dismissing the indictments.

## FACTS

The material facts of this case do not appear to be in dispute. Prior to December 1995, the Shelby County District Attorney General's Office had been investigating alleged criminal activity in various sexually oriented businesses. In December 1995, attorney Larry Parrish (hereinafter "Parrish"), a former Assistant United States Attorney who specialized in the prosecution of obscenity cases, was approached by the executive director of Citizens for Community Values, Inc. (hereinafter "CCV"). CCV is a non-profit organization that supports law enforcement efforts in opposition to obscenity. At the executive director's request, Parrish met with two assistant district attorneys to discuss Tennessee's obscenity laws.

---

[1]Oral arguments in this case were heard in Dyersburg, Tennessee. Students of the Lake County, Dyer County and Dyersburg school systems attended at the invitation of this Court in an effort to educate them about our judicial system.

Immediately thereafter, Parrish was contacted by District Attorney General John W. Pierotti (hereinafter "DA Pierotti"). Although DA Pierotti requested Parrish's assistance, he advised Parrish that his office had no money to pay for services rendered by Parrish other than investigatory expenses. Parrish inquired whether DA Pierotti would accept his services if Parrish were paid by outside sources. DA Pierotti agreed.

Two assistant district attorneys, the DA office's investigator, and investigators from the Tennessee Bureau of Investigation and Department of Revenue were assigned to work with Parrish. It was understood that DA Pierotti was the ultimate decision-making authority, not Parrish.

Parrish immediately launched and spearheaded an extensive, and expensive, investigation of sexually oriented businesses. The investigation's headquarters was Parrish's law office. Parrish met with the two assistant district attorneys and investigators on a daily basis for months. He rendered monthly statements to CCV who paid him from contributions received. According to Parrish's testimony, he considered CCV "the client and CCV gets a statement just like my client XYZ Corporation. And on that statement there is the itemization... for time and expenses just like with every other client."

Although the District Attorney General agreed to pay investigatory expenses, Parrish began paying many of the expenses himself and received reimbursement from CCV. For example, in the course of his investigation, Parrish preferred to utilize court reporters and take sworn statements. These expenses were not borne by the District Attorney General's Office, but instead were reimbursed by CCV. Parrish paid numerous other expenses including, but not limited to, a TV/VCR, copy costs, courier costs, postage, phone expenses, video monitors, extraordinary quantities of paper, installation of special telephone lines and associated equipment. These expenses were also reimbursed by CCV. Surveillance equipment utilized by investigators and a computer were furnished by the District Attorney General's Office.

From December 20, 1995, through July 28, 1996, Parrish accumulated 2,426 hours on this investigation. His fee was approximately $212,000 plus additional expenses of approximately $34,000. He was paid approximately $56,000 by CCV, thereby leaving a balance due of approximately $190,000.

Parrish had not operated under any type of official appointment as an Assistant District Attorney General until July 11, 1996. On this date, Parrish was formally "appointed Special Assistant District Attorney" by DA Pierotti and administered an oath of office. This same day, a civil action was filed in the Chancery Court of Shelby County by the "State of Tennessee *ex rel.* John W. Pierotti" against various sexually oriented businesses.[2] Parrish signed the pleading as "Special Assistant District Attorney General" along with DA Pierotti and two assistant district attorneys.

On August 30, 1996, at DA Pierotti's request, the Governor of Tennessee, pursuant to Tenn. Code Ann. § 8-6-106, appointed Parrish as "additional counsel to the Attorney General in matters relating to. . .cases currently pending in the Chancery Court of Shelby County, Tennessee. . .under the direction of District Attorney General John W. Pierotti." The letter of appointment noted that Parrish agreed to serve as counsel without compensation from the state. However, the letter further provided: (1) Parrish would disclose to the State Attorney General the amount and source of any compensation received; (2) such information would be a public record; and (3) all services would be performed at the direction of the District Attorney General. Another special appointment with similar conditions was made by the Governor relating to this litigation when it was removed to federal court. Finally, by letter of July 31, 1997, the Governor appointed Parrish as additional counsel "to assist in handling criminal indictments and petitions to abate

---

[2]The matter was subsequently removed to federal court but ultimately remanded back to the Chancery Court of Shelby County. The state took a voluntary nonsuit in the Chancery Court on December 12, 1996.

nuisances in the Criminal Court of Shelby County."[3]   Again, the same conditions were set forth in the letter of appointment.

In the latter part of October 1996, a rally organized by CCV was held at the Jewish Community Center.  The purpose of the event, according to Parrish, was to help defray the expenses incurred by CCV, including Parrish's legal fees and expenses incurred in the investigation.   Parrish spoke at the fund raiser.   DA Pierotti, who was resigning his office effective November 1, 1996, also spoke at the rally; as did incoming District Attorney General William L. Gibbons (hereinafter "DA Gibbons").   While speaking against the sexually oriented businesses, neither DA Pierotti nor DA Gibbons solicited contributions.

Upon taking office November 1, 1996, DA Gibbons determined to seek criminal indictments in order to strengthen the civil action for abatement of nuisances.  The Tennessee Bureau of Investigation presented the cases to the grand jury.  The indictments against these defendants were returned in December 1996 and January 1997.  Numerous other indictments relating to sexually oriented businesses were returned as well.

DA Gibbons continued to work closely with Parrish and reiterated that the state would pay all litigation expenses but not compensation for Parrish.   DA Gibbons and various members of his staff continued to meet regularly with Parrish.

From December 20, 1995, through November 17, 1997, Parrish received from CCV, or its contributors, the sum of $410,931.87.  Of this amount, Parrish's expenses totalled in excess of $104,000.00.

## TRIAL COURT'S FINDINGS

The trial court found that Parrish had a "significant interest in the pecuniary rewards" that would result from his prosecutorial activities, had a conflict of interest, and should be disqualified from further prosecutorial participation.   The trial court

---

[3]A petition to abate nuisances was eventually filed by District Attorney General William L. Gibbons on December 15, 1997.  Parrish and three assistant district attorneys also signed this pleading.

5

further determined the entire District Attorney General's staff should be disqualified due to its close working relationship with Parrish. Finally, the trial court determined that the indictments should be dismissed since the actions of Parrish and the District Attorney General's Office violated the defendants' due process rights. The state appeals from these rulings.

## DISQUALIFICATION - STANDARD OF REVIEW

In determining whether a prosecutor should be disqualified, this Court must consider whether the circumstances establish an actual conflict of interest or the appearance of impropriety. State v. Tate, 925 S.W.2d 548, 550 (Tenn. Crim. App. 1995). Either results in disqualification. *Id.* In addition, improper prosecutorial participation can give rise to a due process violation under certain circumstances. *See* State v. Eldridge, 951 S.W.2d 775, 782 (Tenn. Crim. App. 1997)(finding a due process violation by special prosecutors who also represented the victim in a pending civil matter arising from the same incident leading to the criminal prosecution). However, disqualification of a prosecutor does not necessarily give rise to the disqualification of the entire staff of the District Attorney General. *See* Mattress v. State, 564 S.W.2d 678, 680 (Tenn. Crim. App. 1977). The facts of each case should be carefully examined in order to determine whether disqualification of the entire staff is appropriate.

The decision to disqualify a prosecutor and/or the entire prosecutorial staff rests in the sound discretion of the trial judge. State v. Tate, 925 S.W.2d at 549. This Court's review is limited to whether there has been an abuse of discretion by the trial judge. *Id.* at 550.

## DISQUALIFICATION OF PARRISH

6

The state contends that Parrish was duly appointed, and the trial court erred in disqualifying him. Defendants, on the other hand, contend Parrish had a blatant conflict of interest requiring his disqualification.

## A. The Appointment

The duties, responsibilities and authority of the District Attorney General are circumscribed by statute. *See* Tenn. Code Ann. § 8-7-101 *et seq*. Also, the number and compensation of assistant district attorneys general are circumscribed by statute. *See* Tenn. Code Ann. § 16-2-506. Under certain circumstances, crime victims may employ private counsel to act as co-counsel with the District Attorney General "in trying cases." Tenn. Code Ann. § 8-7-401. The state concedes Parrish was not appointed under this statute.

We find no statutory authority which would allow the District Attorney General to informally appoint Parrish to act on behalf of the state from December 1995 until he took an oath of office in July 1996. Nor do we find any statutory authority authorizing the District Attorney General to formally appoint Parrish in July 1996 as a "Special Assistant District Attorney" with the understanding that Parrish would seek compensation from private sources.

The state contends Parrish was properly appointed by the Governor on three separate occasions beginning in August 1996. Tenn. Code Ann. § 8-6-106 provides:

> In all cases where the interest of the state requires, in the judgment of the governor and attorney general and reporter, additional counsel to the attorney general and reporter or district attorney general, the governor shall employ such counsel, who shall be paid such compensation for services as the governor, secretary of state, and attorney general and reporter may deem just, the same to be paid out of any money in the treasury not otherwise appropriated, upon the certificate of such officers certifying the amount to the commissioner of finance and administration.

We note that this statute requires such counsel to be compensated by the state treasury. The letter of appointment, however, specifically provided that Parrish

7

would not be compensated by the state. Although the lack of compensation from the state treasury might not nullify the appointment, the method of compensation utilized by Parrish, as will be discussed more fully hereinafter, clearly justifies his disqualification in the criminal prosecution.

## B. Ethical Constraints

The state contends Parrish had no conflict of interest since the interests of CCV and the state were the same; namely, the prosecution of criminal activity and abatement of nuisances relating to sexually oriented businesses. Defendants contend that Parrish clearly had a conflict of interest by virtue of being enormously compensated by a special interest group.

This Court stated in State v. Eldridge,

> [t]he responsibility of a public prosecutor differs from that of the usual advocate in that it is the public prosecutor's duty to seek justice, not merely to convict. *Code of Professional Responsibility*, Tenn. S.Ct. Rule 8, EC 7-13. Unlike a private prosecutor, the public prosecutor is not only an advocate but also must make decisions normally made by an individual client, and those affecting the public interest should be fair to all. *Id.* A public prosecutor represents the government. A public prosecutor is required to make timely disclosure of exculpatory materials. DR 7-103(B).
>
> On the other hand, private counsel has an obligation to zealously represent the client so as not to prejudice or damage the client during the course of the professional relationship. DR 7-101. Counsel has a duty of fidelity, unquestioned, continuing fidelity to the client. Brotherhood of Locomotive Firemen & Enginemen v. United States, 411 F.2d 312, 319 (5th Cir. 1969).

951 S.W.2d at 781; *see also* Young v. United States *ex rel.* Vuitton, 481 U.S. 787, 803-04, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

A prosecutor appointed by the District Attorney General or the Governor must abide by the ethical requirements for prosecutors. If that prosecutor is compensated by a special interest group, his or her ethical dilemma is obvious. The attorney owes absolute loyalty to his client, the special interest group. However, as a prosecutor he or she represents the government, not a special interest group.

8

Accordingly, such a prosecutor is not free from compromising influences and loyalties.

## C. Due Process

In <u>Wilson v. Wilson</u>, ___ S.W.2d ___ (Tenn. 1998), our Supreme Court found no due process violation when a private attorney, representing the beneficiary of a court order in a civil case, prosecuted a criminal contempt action alleging a violation of that order. The Court examined three factors in analyzing the due process issue: (1) the private interest at stake; (2) the risk of enormous deprivation of the interest through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at ___; <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Weighing those factors relative to a private attorney prosecuting a contempt charge, the court concluded there was no due process violation.

Applying those factors to the case at bar, they dictate a different conclusion. Firstly, a significant liberty interest is at stake in that defendants have been indicted on multiple felony charges. Secondly, the use of an interested prosecutor allows influences other than "justice" or the "public interest" to weigh upon prosecutorial decisions. *See* John D. Bessler, *The Public Interest and the Unconstitutionality of Private Prosecutors*, 47 Ark.L.Rev. 511, 576 (1994). Finally, the burden placed upon government by the elimination of an interested prosecutor is not great. Unlike the tremendous fiscal and administrative burdens that <u>Wilson</u> noted would result if District Attorneys General prosecuted contempt matters, District Attorneys General already have the responsibility to prosecute obscenity-related charges. *See* Bessler, <u>supra</u> at 576. Therefore, we conclude that the use of an interested, privately financed prosecutor in the case at bar does not survive a due process challenge as enunciated in <u>Wilson</u>. *See also* <u>State v. Eldridge</u>, 951 S.W.2d at 782-83.

9

### D. Financial Interest

The state contends Parrish reaps no financial benefits from the resolution of this matter, regardless of its outcome, since he is paid on an hourly basis. We reject this argument. Logic and common sense dictate that private counsel who receives over $300,000 in legal fees from a client to assist in a criminal prosecution indeed has a financial interest in that prosecution. The trial court found that Parrish had a "significant interest in the pecuniary rewards" that would result from his continuance as a prosecutor. We agree.

In summary, the prosecutorial participation by Parrish violates the defendants' due process rights and creates, at the very least, an appearance of impropriety. Disqualification is, therefore, required. State v. Tate, 925 S.W.2d at 550. The trial court clearly did not abuse its discretion in requiring Parrish's disqualification.

## DISQUALIFICATION OF DISTRICT ATTORNEY GENERAL AND HIS STAFF

The state contends that even if Parrish is disqualified, there is no reason to disqualify the District Attorney General and his entire staff. Defendants contend the District Attorney General's Office has aligned itself with the special interest group, is not impartial, and must also be disqualified.

### A. Zealous Prosecution

Firstly, we reject defendants' argument that the District Attorney General's Office has acted improperly by stating its intention to put sexually oriented establishments out of business. There is nothing improper about zealous prosecution. Young v. United States *ex rel.* Vuitton, 481 U.S. at 806, 107 S.Ct. at 2137; Wilson v. Wilson, ___ S.W.2d at ___. If a prosecutor is "honestly convinced of the defendant's guilt, the prosecutor is free, indeed obliged, to be deeply interested in urging that view by any fair means. True disinterest on the issue of such a defendant's guilt is the domain of the judge and the jury - not the prosecutor." Wilson v. Wilson, ___ S.W.2d at ___ (quoting Wright v. United States,

732 F.2d 1048, 1056 (2nd Cir. 1984)). We find nothing inappropriate in the District Attorney General's Office publicly vowing to prosecute alleged criminal activity and abate an alleged nuisance.

## B.  Appearance of Impropriety

However, our analysis does not end there.  We must determine whether the actions of the District Attorney General's Office have created an appearance of impropriety.  We are constrained to agree with the trial court's conclusion that they have.

Except for the investigatory work done prior to Parrish's involvement in December 1995, the District Attorney General's Office considered Parrish a "Special Assistant District Attorney" and worked closely with him.  During this time, the District Attorney General's Office was aware that Parrish's legal fees and substantial expenses were being paid by a special interest group.  The state has, at least indirectly, benefited from contributions from that special interest group. There is an appearance of impropriety.[4]

## C.  Private Citizen Analogy

The state argues that the situation at hand is analogous to a private citizen spending his own money and time investigating criminal activity and then presenting that information to the District Attorney General's Office.  The state contends that the District Attorney General's Office should not be precluded from pursuing a case simply because its investigators did not produce the evidence with funds allocated to the District Attorney General.

We agree totally with the state's argument that a District Attorney General's Office should not be disqualified under those circumstances.  However, that is not the scenario presented by this case.  The information was not simply gathered by

---

[4]*See* People v. Eubanks, 927 P.2d 310 (Cal. 1997), holding a crime victim's contribution of $13,000 for the District Attorney's investigation expense justified the disqualification of the District Attorney's Office.  The Court based its holding upon a California disqualification statute and declined to reach the due process issue.

a private source and turned over to the District Attorney General's Office. The private party in this case was considered a "Special Assistant Attorney General" and acted upon the direction of the District Attorney General. He was paid with funds provided by a special interest group with the knowledge of the District Attorney General's Office. This is not analogous to a private citizen simply turning over information to the District Attorney General's Office.

**D. Screening Methods**

The crucial inquiry becomes whether the District Attorney General and/or his entire staff should be disqualified from prosecuting these cases. The state correctly argues that disqualification of one or more prosecutors, due to an actual or apparent conflict, would not necessarily bar the participation of the entire office. *See* State v. Tate, 925 S.W.2d at 556; Mattress v. State, 564 S.W.2d at 680. We must, however, examine whether the challenged attorneys adopted sufficient screening methods to insulate themselves and their work from the remainder of the staff. *See* State v. Tate, 925 S.W.2d at 557-58. In fact, this Court held it to be "incumbent upon the state to prove by clear and convincing evidence that the challenged attorney has been sufficiently screened from the remainder of the staff and its work on the pending case." *Id.* at 558 (quoting State v. Willie Claybrook, C.C.A. No. 3, Gibson County (Tenn. Crim. App. filed February 5, 1992, at Jackson)).

Obviously, prosecutors who worked directly with Parrish should be disqualified. This includes the District Attorney General and other Assistant District Attorneys General. Furthermore, there is no evidence of any screening procedures having been implemented. According to the testimony, Parrish not only worked with the District Attorney General and certain assistants but also attended regular staff meetings in the District Attorney General's Office. As in Tate, where the state was unable to establish appropriate screening measures, disqualification of the entire staff "is inevitable." 925 S.W.2d at 557.

The trial court concluded that "there is no proof in this record just as to what shared confidences may have taken place between [the assistants who worked

12

directly with Parrish and] other members of the staff or what screening measures were taken." Accordingly, the trial court concluded the entire staff should be disqualified. Under our standard of review, we cannot conclude that the trial court abused its discretion in disqualifying the District Attorney General and his entire staff.


## DISMISSAL OF THE INDICTMENTS

The trial court concluded that the actions of Parrish and the District Attorney General's Office violated the defendants' due process rights and dismissed the indictments. The state argues that even if disqualification is appropriate, dismissal of the indictments is not proper. We agree.

An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). "It has long been established that a grand jury can consider evidence obtained in violation of an accused's constitutional rights notwithstanding the fact the evidence will be inadmissible at the ensuing trial." State v. Dixon, 880 S.W.2d 696, 700 (Tenn. Crim. App. 1992). In this jurisdiction, the sufficiency and legality of the evidence presented to a grand jury is not the proper subject of judicial review. State v. Gonzales, 638 S.W.2d 841, 845 (Tenn. Crim. App. 1982); State v. Northcutt, 568 S.W.2d 636, 639 (Tenn. Crim. App. 1978).

That is not to say that a defendant is never entitled to dismissal of an indictment based upon grand jury deficiencies. For instance, discriminatory exclusion of persons from the grand jury entitles an accused to dismissal of the indictment. See Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181 (1946). However, the ordinary remedy for improper evidence being presented to the grand jury is suppression of the evidence at trial. See United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966).

13

Defendants' remedy lies in a motion to suppress, not in dismissal of the indictments. This Court is not privy to the evidence presented to the grand jury. We are unable to address this question based upon the record before us. We, therefore, leave this to the trial court's determination upon remand should a motion to suppress be filed by the defendants.

## CONCLUSION

This Court in no way questions the motives or integrity of Parrish, DA Pierotti, DA Gibbons, or any staff of the District Attorney General's Office.[5] The record reflects a zealous prosecutorial effort to pursue alleged criminal violations and alleged nuisances. However, that is not the issue before this Court. At issue is whether a private attorney, specially appointed to assist the District Attorney General in the prosecution of sexually oriented businesses, should be disqualified from prosecutorial participation if the attorney receives substantial compensation from a private, special interest group. Based upon the facts and circumstances of this case, we hold this is simply impermissible under the Constitution of the United States and under the Constitution and statutes of the State of Tennessee.[6] Further, where the District Attorney General's Office knowingly allows such person to serve in that capacity and knowingly assists in a joint venture of this nature, a trial court does not abuse its discretion by disqualifying the actively participating assistants; and, in the absence of appropriate screening methods, the entire District Attorney General's Office. The remedy for aggrieved defendants under these circumstances, however, is not dismissal of the indictments, but rather the suppression of evidence in the event of trial.

---

[5]In fairness to the District Attorney General's Office, we note this case presents an issue of first impression. Although indicted in December 1996 and January 1997, defendants did not file the motion to disqualify until November 1997. State v. Eldridge, 951 S.W.2d 775 (Tenn. Crim. App. 1997), the first Tennessee case to recognize a due process violation relating to the actions of a private prosecutor, was filed May 7, 1997, and published months later.

[6]We restrict our holding to the facts and circumstances presented in this case. We do not address the constitutional implications of Tenn. Code Ann. § 8-7-401 allowing private counsel to act as co-counsel with the District Attorney General "in trying cases." *See* State v. Eldridge, *supra*; State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990)(holding the statute constitutional).

For these reasons, we affirm the judgment of the trial court disqualifying Special Assistant District Attorney Larry Parrish, the Shelby County District Attorney General and his entire staff, but reverse the order dismissing the indictments.

 

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOHN H. PEAY, JUDGE**

(Not participating)_____
**JAMES C. BEASLEY, SR., SPECIAL JUDGE**