IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2011

**STATE OF TENNESSEE v. GROVER L. PARKS**

**Direct Appeal from the Criminal Court for Polk County**
**No. 08-130    Carroll Ross, Judge**

**No. E2010-02557-CCA-R3-CD - February 17, 2012**

A Polk County jury convicted the Defendant, Grover L. Parks, of theft of property valued over $10,000 and less than $60,000, and the trial court sentenced him to five years in the Tennessee Department of Correction. On appeal, the Defendant contends: (1) the evidence is insufficient to sustain his conviction; and (2) the trial court erred when it failed to disqualify the special prosecutor from prosecuting the case. After a thorough review of the record and applicable authorities, we conclude there exists no error. We, therefore, affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. J.C. MCLIN, J., not participating.[1]

Richard Hughes, Cleveland, Tennessee, and James O. Martin, III, Nashville, Tennessee (on appeal) and John Fortuno, and Larry Wright, Cleveland, Tennessee (at trial), for the appellant, Grover L. Parks.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Stephen Bebb, District Attorney General; Carl Petty, Special Prosecutor; and Drew Robinson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

---

[1]The Honorable J.C. McLin died September 3, 2011, and did not participate in this opinion. We acknowledge his faithful service to this Court.

In April 2007, a Polk County grand jury indicted the Defendant, Grover L. Parks, for one count of theft of property valued over $10,000 and less than $60,000 and one count of assault. The State dismissed the assault charge, and the record reflects the State informed the Defendant that it would dismiss the theft of property charge if the Defendant paid restitution to the victim, Paul Syiek. The Defendant agreed, and the State dismissed the charge. The Defendant, however, failed to pay the agreed restitution, and the Polk County grand jury re-indicted him for theft of property valued over $10,000 and less than $60,000.

At the Defendant's trial, Syiek testified that, while he maintained his primary residence in Georgia, he had purchased 720 acres of land in Cleveland, Tennessee, in December 2006. When he returned to the property in February 2007, he discovered that missing from the property were a tractor, a bush hog, and a tarp-covered trailer he stored on the land. Syiek reported the theft to authorities on February 25, 2007, and informed them that he knew the equipment had been taken within the last three weeks. He said he further informed authorities that he had seen the missing equipment in open view on the property of his neighbor, the Defendant.

Syiek further testified that where he stored the trailer on his property, before it was taken, blocked a portion of a road used by the Defendant but that there were many other roads the Defendant could have used to access his property. Syiek recounted that successfully taking the equipment from his property required that someone open a locked gate at the entrance of his property and then move the equipment. He said that, additionally, the ignition switch on the tractor had been replaced, the seat on the tractor and shaft connecting the tractor to the bush hog were missing, and the muffler suffered damage. Syiek estimated the value of the three pieces of equipment at $23,000.

Officer James Burris of the Polk County Sheriff's Office testified that he took Syiek's report. Officer Burris accompanied Syiek to the Defendant's residence, where they discovered the tractor, bush hog, and trailer on the Defendant's land. Officer Burris testified that the Defendant told him that he had reported the equipment as abandoned to the Sheriff's Department and then, fearing it may be stolen, he moved the equipment onto his property in order to prevent it from being stolen. The Defendant admitted that he used the tractor to work on his own property. Based on finding the equipment on the Defendant's property and the Defendant's admission, Office Burris arrested the Defendant.

Detective Joe Price of the Polk County Sheriff's Office testified that his office did not receive a report regarding abandoned equipment at that location.

Michael Cantrell testified on behalf of the Defendant that he saw a large tractor

2

parked in the middle of the dirt road he used to access the Defendant's residence. He testified that the tractor had the bush hog attached to it. He also testified that the tractor was not on the trailer, but the trailer sat near the tractor on Syiek's property. He said that he noticed that someone had removed the key switch assembly. Cantrell said that he and the Defendant used Cantrell's truck to move the tractor to a location away from the path of traffic. Cantrell said he helped the Defendant remove the battery in order for the Defendant to charge it, enabling him to move the tractor to his property.

Marty Lillard also testified as a witness for the Defendant. He testified that he saw the tractor on the side of the road and saw a detached bush hog sitting in the middle of the driveway used by the Defendant. He noticed that both the tractor and bush hog appeared to be vandalized. He testified that the tractor had a missing key switch, the bush hog had been removed from the tractor, and a hydraulic hose on the tractor had damage. Lillard said that he noticed the ignition wires were cut, but he and the Defendant found an ignition key switch under the seat of the tractor. Lillard assisted the Defendant in moving the tractor and reattaching the bush hog. Lillard testified that the Defendant wanted to move the tractor and bush hog because it blocked the entrance to his residence and people had been vandalizing it.

The Defendant testified that the first time he knew of the presence of the equipment was in December of 2006 when visitors inquired as to why the equipment, specifically the tractor, blocked a portion of his driveway. The Defendant testified that Cantrell helped him move the tractor to a portion of the driveway where it did not block his path. Later, when the Defendant tried to leave his residence, he testified that the bush hog had been moved and blocked his driveway. At that time, he had Lillard help him use the tractor to move the bush hog onto his land. He testified that he moved the equipment so he could get around them and to prevent them from being stolen. The Defendant said that, before he moved the tractor, it appeared that someone replaced the ignition key switch on the tractor but that he had a key that worked on the new switch. The Defendant said that he called the sheriff's department once from his neighbor's house to report the abandoned equipment; however, he did not call a second time because he did not have access to a phone. The Defendant acknowledged using the tractor to do work on his property, and he planned to keep it if no one claimed it.

Based upon this evidence, the jury convicted the Defendant of theft of property valued over $10,000 and less than $60,000. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant presents two issues for review: (1) the evidence is insufficient to sustain his conviction; and (2) the trial court erred when it failed to disqualify

the private prosecutor from prosecuting the case.

## A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction for theft of property because no evidence exists to prove his intent to deprive the owner of his property. He argues that, as a result, the State did not prove all the elements of theft of property beyond a reasonable doubt.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary

4

instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In the case under submission, the jury convicted the Defendant of theft of property valued over $10,000 and less than $60,000. This crime requires a jury to find the following elements beyond a reasonable doubt: (1) that the defendant knowingly obtained or exercised control over property owned by another; (2) that the defendant did not have the owner's effective consent; and (3) that the defendant intended to deprive the owner of the property. T.C.A § 39-14-109 (2010). The Defendant acknowledges that the State proved beyond a reasonable doubt that he knowingly obtained and exercised control over the property without the owner's consent. The Defendant, however, contends that no evidence establishes his intent to deprive the owner of the property.

The evidence presented at trial, when viewed in the light most favorable to the State, established Syiek's equipment (a tractor, trailer, and bush hog) were removed from his property and found on the Defendant's property. The Defendant admitted that he moved the equipment onto his land, and he admitted that he used the equipment to work on his property. The Defendant said that, before he moved the tractor, it appeared that someone replaced the ignition key switch on the tractor; he also testified that he had a key that happened to work on the new switch. The Defendant testified that he called the sheriff's department to report that the tractor blocked the Defendant's property entrance; however, both Officer Burris and Detective Price testified that the sheriff's department received no reports regarding the tractor. Further, the Defendant testified that he planned to keep the tractor if no one claimed it.

We conclude that the evidence is sufficient to support the jury's finding that the Defendant intended to commit theft when he took the tractor and other equipment from Syiek's property and moved it onto his own property. The Defendant not only moved the tractor onto his property, but he fixed and made various changes to the tractor and used it to

do work on his property. Thus, we find the evidence sufficient to support the jury's finding beyond a reasonable doubt that the Defendant knowingly obtained or exercised control over property owned by Syiek, that the Defendant did not have Syiek's consent, and that the Defendant intended to deprive Syiek of the property. *See* T.C.A. § 39-14-103 (2010). He is not entitled to relief on this issue.

## B. Involvement of the Special Prosecutor

The Defendant next contends that the trial court erred when it denied his motion to disqualify the special prosecutor. The record shows that, on the morning of the Defendant's trial, the Defendant filed a motion to disqualify Special Prosecutor Carl Petty, whom had been appointed to represent the State. In support of his motion, the Defendant argued that (1) Special Prosecutor Petty's participation in the case presented a conflict of interest because of his involvement in a civil suit between the victim and the Defendant, and that (2) the special prosecutor's involvement violated his due process rights because Special Prosecutor Petty had personal interest in the outcome of the trial.

During the motion hearing, the Defendant presented a letter that Special Prosecutor Petty had written to the Defendant on Syiek's behalf. The letter referred to an agreement the State made with the Defendant: the Defendant's theft charge would be dismissed if he paid restitution to Syiek. The letter also advised the Defendant to cease using the dirt road on Syiek's property to access the Defendant's land.[2] The letter warned that the State could pursue criminal trespass charges if he did not do so.

The Defendant argued that the letter showed that Special Prosecutor Petty represented Syiek in a civil capacity, and Special Prosecutor Petty's continued involvement in the criminal case presented a conflict of interest and also violated the Defendant's constitutional rights. At the motion hearing, Special Prosecutor Petty testified that Syiek retained him at a fixed rate to encourage the Defendant to pay the restitution, and he would not receive any amount of the restitution. Special Prosecutor Petty stated that neither he nor Syiek had any intention of filing a civil suit against the Defendant.

The trial court concluded that no civil suit existed and that Special Prosecutor Petty's actions did not amount to representation of Syiek in a civil action. Therefore, the letter did not prove the existence of a conflict of interest, his involvement did not violate the due process rights of the Defendant, and the trial court found Special Prosecutor Petty qualified to continue working on the case in his capacity as a special prosecutor.

---

[2]This Court notes that the easement dispute is not within the scope of this case as presented on appeal.

## 1. Conflict of Interest

In the case under submission, the Defendant contends that the participation of Special Prosecutor Petty amounted to a conflict of interest. He argues that a conflict of interest existed because Syiek retained Special Prosecutor Petty to represent him in his efforts to resolve a property dispute with the Defendant and to recover restitution from the Defendant. The Defendant contends that the special prosecutor's involvement constituted a conflict of interest because, after Special Prosecutor Petty agreed to serve on behalf of the State in the criminal matter, he stated that he did not plan to file a civil suit in the matter. The Defendant argues that such an action violates the special prosecutor's ethical duties, which gives rise to a conflict of interest. The State argues that no conflict of interest exists because the special prosecutor did not file a civil suit against the Defendant. We agree with the State.

In Tennessee, "[a] victim of crime or the family members of a victim of crime may employ private legal counsel to act as co-counsel with the district attorney general or the district attorney general's deputies in trying cases, with the extent of participation of such privately employed counsel being at the discretion of the district attorney general . . . ." T.C.A. § 8-7-401(a) (2002). The trial court must hold a hearing to determine whether the private legal counsel employed as a special prosecutor is qualified and whether there exists a conflict of interest. T.C.A. § 8-7-401(b)(1) (2002).

The United States Supreme Court addressed the conflict of interest issue as related to special prosecutors, stating that "[a]n arrangement represents an actual conflict of interest if its potential for misconduct is deemed intolerable. The determination whether there is an actual conflict of interest is therefore distinct from the determination whether that conflict resulted in any actual misconduct." *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 807 n.18 (1987) (finding due process rights violated when private prosecutors pursued a criminal contempt charge that arose out of a civil court order).

The Defendant argues that the present matter is analogous to *State v. Eldridge*, wherein this Court found that ethical dilemmas and conflicts of interest arise "due to differing roles of the government prosecutor and private prosecutor." 951 S.W.2d 775, 781 (Tenn. Crim. App. 1997) (holding that participation by special prosecutors who represented the victim in a civil matter arising from the same incident giving rise to the criminal prosecution violated the defendant's rights to due process of law). The Court explained that a public prosecutor must advocate for justice, make decisions that affect the public interest, and make timely disclosures of exculpatory materials. *Id.* On the other hand, private counsel have "an obligation to zealously represent the client so as not to prejudice or damage the client during the course of the professional relationship. Counsel has a duty of . . . unquestioned, continuing fidelity to the client." *Id.* (citing *Bhd. of Locomotive Firemen &*

*Enginemen v. United States*, 411 F.2d 312, 319 (5th Cir. 1969)). Because the special prosecutor "is placed in the awkward position of representing both the government and the individual victim," conflicts of interest may occur. *Id.* at 781.

In *Eldridge*, special prosecutors actively negotiated a civil settlement with the defendant for injury damages stemming from the same incident as the criminal charge. As a result, the civil suit created a conflict of interest that prejudiced the defendant, and the special prosecutors created an ethical dilemma because their duties to the government and the victim conflicted. In the current case, unlike the situation in *Eldridge*, the victim did not file a civil suit against the Defendant. In his letter on behalf of Syiek, Special Prosecutor Petty simply acknowledged that the District Attorney's Office would handle any future legal action. Special Prosecutor Petty's actions did not amount to a conflict of interest because he did not represent Syiek in a civil case arising out of the occurrence that gave rise to the criminal prosecution. Syiek paid Special Prosecutor Petty a fixed fee to write a letter to the Defendant. The special prosecutor received the fixed fee from Syiek prior to the commencement of these criminal proceedings against the Defendant, and the fee was not tied to the outcome of the criminal case.

Special Prosecutor Petty did not have a contingency fee agreement with the victim, whereby the special prosecutor would receive any portion of the restitution sought by the victim. At the motion hearing, the trial court found that Special Prosecutor Petty "does not represent the victim in any civil case arising out of the occurrence which gave rise to this criminal prosecution." Because Special Prosecutor Petty did not represent Syiek in any civil matter concerning the Defendant, no conflict of interest existed that would call his prosecutorial decisions into question. Therefore, the trial court correctly ruled that Special Prosecutor Petty was qualified to prosecute the case with the assistant district attorney. The Defendant is not entitled to relief on this issue.

### 2. Due Process Violation

The Defendant argues that Special Prosecutor Petty had a personal interest in the outcome of the trial. He contends that the "dual representation" of the special prosecutor violated the Defendant's due process rights. We disagree.

In Tennessee, victims have the right to hire a special prosecutor. T.C.A. § 8-7-401 (2002). Our Supreme Court has held that special prosecutors are not automatically disqualified because of due process concerns. *See Wilson v. Wilson*, 984 S.W.2d 898, 903-04 (Tenn. 1998) (holding that if "due process precludes a litigant's private attorney from prosecuting contempt proceedings, many citizens would be deprived of the benefits to which they already have been adjudged entitled by state courts and many state court orders would

8

remain unenforced"). Further, as stated in *Wilson*, the Tennessee Supreme Court has found "no ethical standard which mandates adoption of an automatic rule of disqualification." *Id.* at 904.

In *State v. Bennett*, this Court has analyzed whether a deprivation of a constitutional right was related to the participation of a private prosecutor, describing four circumstances when the involvement of a private prosecutor could cause a constitutional violation: (1) when the private prosecutor engages in prosecutorial misconduct; (2) if the private prosecutor represents the victim or the family of the victim in a civil case arising out of the same criminal action(s); (3) it is a contempt proceeding arising out of a civil prosecution; and (4) the district attorney general does not maintain control of the case as required by statute. 798 S.W.2d 783, 786 (Tenn. Crim. App. 1990).

Three of the four the situations that would amount to constitutional violations, as described in *Bennett,* do not apply to this case: the Defendant did not claim prosecutorial misconduct, this matter is not a contempt proceeding, and the Assistant District Attorney maintained control of the case by participating in bench conferences and delivering the final rebuttal, which satisfies the statutory requirements discussed above. *See id.*; T.C.A. § 8-7-401 (2002). The trial court held a pretrial hearing to determine the qualifications of Special Prosecutor Petty, and the trial court found him fit to proceed with the criminal case. Therefore, the single remaining issue is whether a civil case arose from the same occurrence as the criminal case, causing a violation of the Defendant's due process rights.

In this case, Syiek paid Special Prosecutor Petty a flat fee retainer to send the Defendant a letter to remind him to comply with a previous agreement made with the trial court, whereby his charges would be dismissed if he paid restitution to Syiek for the damage the Defendant caused to Syiek's property. Special Prosecutor Petty's letter reminded the Defendant that he would be subject to re-indictment on the theft charge if he did not comply with the agreement. Special Prosecutor Petty stated in the letter that he will "proceed directly to the District Attorney's Office and see what can be done to enforce the payment of this restitution and follow through with the orders of the Court." The trial court found that, despite the special prosecutor's authorship of the letter, Special Prosecutor Petty did not file a civil suit on behalf of Syiek against the Defendant. As a result, no civil suit existed, and the trial court held that the special prosecutor's involvement "is not a violation of the due process rights of the [D]efendant." Therefore, considering the record and applicable law, we agree with the conclusion of the trial court. The Defendant is not entitled to relief on this issue.

### III. Conclusion

9

After a thorough review of the record and applicable law, we conclude the evidence was sufficient to support the Defendant's conviction for theft of property valued over $10,000 and less than $60,000, and the trial court properly allowed the special prosecutor to participate in the trial. As such, we affirm the trial court's judgment.


_____
ROBERT W. WEDEMEYER, JUDGE